# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MICHAEL R. HYMAN,

       Plaintiff,

  vs.

                                       No. CIV 18-1103 JB\K

NEW MEXICO STATE UNIVERSITY;
THE BOARD OF REGENTS OF NEW
MEXICO STATE UNIVERSITY; DAN
HOWARD in his official capacity as
Provost of New Mexico State University;
JAMES HOFFMAN in his official
capacity as Dean of the College of
Business at New Mexico State University;
LAURI MILLOT in her official capacity
as Director of the Office of Institutional
Equity at New Mexico State University;
NANCY ORETSKIN in her official
capacity as Head of Marketing
Department at New Mexico State
University;

           Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Partial Motion to Dismiss Plaintiff's

Complaint, filed March 11, 2019 (Doc. 10)("Motion"). The Court held a hearing on December

19, 2019. The primary issues are: (i) whether the Court should dismiss Counts I, III, and V, of

the Complaint, filed November 27, 2018 (Doc. 1), which allege gender discrimination, an

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, violation, and disability

discrimination, because the Defendants have raised a failure-to-exhaust affirmative defense; (ii)

whether the Court should dismiss the individual Defendants, because Plaintiff Michael R.

Hyman did not name them in his Equal Employment Opportunity Commission ("EEOC")

Charge of Discrimination (dated July 11, 2018), filed March 11, 2019 (Doc. 10-1)("Charge");

and (iii) whether the Court should dismiss Count IV, which is a state-law claim for tortious interference with contract, because the Defendants are state government entities and state public employees who are immune from tort liability for tortious interference with contract because the State of New Mexico has not waived liability for tortious interference with contract. The Court grants the Motion, because (i) Hyman did not exhaust his administrative remedies for the acts alleged in Count I, III, and V -- gender discrimination, an ADA violation, and disability discrimination; and (ii) the Defendants are government entities and public employees who are immune from tort liability from the alleged incidents. The Court, therefore, dismisses Counts I, III, and V -- for gender discrimination, an ADA violation, and disability discrimination -- without prejudice and dismisses Count IV -- tortious interference with contract -- with prejudice.

## FACTUAL BACKGROUND

This case arises out of the charge of discrimination that Hyman filed with the EEOC "on or about 11 July 2018." Complaint ¶ 6, at 3 (citing Charge at 1). As a result of his Charge, the EEOC mailed him a right-to-sue letter "on or about 31 August 2018." Complaint ¶ 6, at 3. Hyman filed the case within ninety days of receiving the right-to-sue letter. See Complaint ¶ 6, at 3.

## PROCEDURAL BACKGROUND

In his Complaint, Plaintiff Michael Hyman alleges eight causes of action. See Complaint at 1-2.[1] In their Motion, the Defendants ask the Court to "dismiss Count [I] (discrimination

---

[1]Although the Court counts eight causes of action in the Complaint's Jurisdiction and Venue section, see Complaint at 1-2, Hyman addresses only six counts in the remainder of the Complaint, see Complaint 3-16. The Court concludes that Hyman consolidated "retaliation for

based on gender); Count III (violation of plaintiff's rights under the ADA); Count IV (interference with Contract) and Count V (discrimination based on disability)."  Motion at 1-2 (punctuation as in original).  The Defendants also request "further relief as the Court deems appropriate."  Motion at 6.

1.  **The Complaint.**

Hyman's first count alleges gender discrimination pursuant to "Title VII of the Civil Rights Act of 1964 as amended and covered by similar state law protections."  Complaint ¶ 14, at 4.  He states that, while serving as the Department of Marketing Ph.D. coordinator, he "was not informed, let alone invited, to official meetings between students and [Defendant Nancy] Oretskin."  Complaint, ¶ 14 a., at 4.  Hyman further alleges that Oretskin "required Hyman to hold physical office hours for an online course" and threatened to deny his Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"), leave if he did not hold the physical office hours. Complaint ¶ 14 b., at 4.  Moreover, Hyman argues, Oretskin did not permit a doctoral student to hold Hyman's physical office hours in contrast to a female doctoral student who "was allowed to hold virtual office hours from Europe while teaching online in Summer 2017."  Complaint ¶ 14 b., at 4-5.  Hyman also alleges that Oretskin "refused to correct errors in [Hyman's] most recent annual evaluation and refused to consider any contrary documentary evidence."  Complaint ¶ 14 c., at 5.  Hyman next alleges that Oretskin encouraged a female Ph.D. student to file a "meritless complaint" against Hyman, which Oretskin included in Hyman's annual performance review. Complaint ¶ 14 e., at 5.  Finally, Hyman alleges that Oretskin consulted with female faculty

---

filing a complaint based on disability" and "retaliation for filing a complaint based on gender discrimination," Complaint ¶ 3, at 3, into "Count VI – Retaliation for Filing Complaints," Complaint at 12.  The Court, does not, however, see any reference of "tortious intentional infliction of emotional distress" anywhere else in the Complaint.  Complaint ¶ 3, at 2.

members about their Ph.D. students' work but did not consult with Hyman about his Ph.D. students' work.  <u>See</u> Complaint ¶ 14 f., at 5-6.  Hyman states that these allegations are "illustrative, not exhaustive" and that he "reserves the right to amend and include additional instances . . . through the discovery period and up to the point that any scheduling order or other court order prohibits amendment."  Complaint ¶ 14, at 6.

Hyman's second count alleges that Defendants New Mexico State University ("NMSU"), Dan Howard, and James Hoffman discriminated against Hyman because of his age.  <u>See</u> Complaint at 6.  He states that they pressured Hyman to resign or retire "through their actions, discussed elsewhere in this document."  Complaint ¶ 19, at 7.  Hyman's third count alleges that NMSU and Hoffman violated Hyman's rights under the ADA.  <u>See</u> Complaint at 7.  NSMU's Office of Institutional Equity issued Hyman an EEO accommodation[2] in the fall of 2012, which Hyman has never invoked.  <u>See</u> Complaint ¶ 22 a., at 8.  Hyman alleges that, although Hoffman was aware of this accommodation, he "repeatedly attempted to increase Hyman's synchronous assignments."  Complaint ¶ 22 a., at 8.

---

[2]The Court concludes that, when Hyman refers to an "EEO accommodation," he is referring to a Reasonable Accommodation under the Americans with Disabilities Act, which is enforced by the EEOC.  Under the ADA, an employer must

> "provide reasonable accommodation to qualified individuals with disabilities who are employees or applicants for employment, unless to do so would cause undue hardship.  In general, an accommodation is any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities."

EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, available at https://www.eeoc.gov/policy/docs/accommodation.html (last visited January 17, 2020).

Hyman's fourth count alleges that Defendants Lauri Millot, NMSU, Howard, Hoffman, and Oretskin are liable for interference with contract. See Complaint at 10. Hyman says that they "have created an extremely unpleasant work environment in their effort to pressure [him] to retire/resign," "violate[d Hyman's] property rights to his position as a Distinguished Achievement Professor," and have not given him "a merit-related pay increase nor any other award" "since Hoffman's hiring as Dean of the College of Business." Complaint ¶ 25, at 10. Hyman's fifth count alleges that NMSU, Hoffman, and Oretskin discriminated on Hyman based on his disability. See Complaint ¶ 30 b., at 11. Hyman states that, although he received an "excellent" internal review, Oretskin and Hoffman "removed [him] from [his] coordinator position [in retaliation for] making it obvious Hyman would resist efforts to unilaterally violate Ph.D. Program policies to Ph.D. students' detriment." Complaint ¶ 30 b, at 11. Hyman's sixth count alleges that NMSU, Howard, Hoffman, and Millot have retaliated against Hyman for filing complaints. See Complaint ¶ 34 b, at 13. Hyman alleges that

> (i) Hoffman retaliated against [Hyman] for representing a faculty preference that Hoffman be removed as Dean of the College of Business, (ii) Howard retaliated against [Hyman] for filing a complaint against Hoffman and Millot, and (iii) Millot retaliated against [Hyman] for complaining Millot's lack of timeliness was contrary to New Mexico State University and EEOC policy.

Complaint ¶ 34 b., at 13. He also alleges that Hoffman has "repeatedly slandere[ed him] to senior faculty and administrators." Complaint ¶ 34 b., at 13.

**2.  Partial Motion to Dismiss.**

The Defendants filed their Motion moving to dismiss Counts I, III, and V under rule 12(b)(6) of the Federal Rules of Civil Procedure and Count IV under rule 12(b)(1) of the Federal Rules of Civil Procedure. See Motion at 1. The Defendants note that they are moving to dismiss

under 12(b)(6) as opposed to 12(b)(1) for counts I, III, and V, because the United States Court of Appeals for the Tenth Circuit recently concluded that, although failure to exhaust is an affirmative defense, it does not "implicate the court's jurisdiction to hear such a claim." Motion at 1 (citing Lincoln v. BNSF Ry. Co., 900 F.3d 1166 (10th Cir. 2018). The Defendants begin their arguments by stating that that the Court must dismiss Counts I, III, and V, because Hyman has not exhausted his administrative remedies regarding these gender and disability discrimination claims. See Motion at 3-4. The Defendants note that, although "[g]enerally, failure to check the applicable box on the EEOC charge amounts to failure to exhaust administrative remedies as to a certain type of claim," Motion at 4 (citing Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 301 (4th Cir. 2009)), that "presumption can be rebutted 'if the text of the charge clearly sets forth the basis of the claim," Motion at 4 (quoting Jones v. United Parcel Serv., Inc., 502 F.3d at 1186). The Defendants contend that Hyman checked only the age discrimination and retaliation claim boxes, and that his Charge's text was "devoted wholly" to age discrimination claims. Motion at 5. The Defendants thus conclude that the Charge can be construed as alleging only age discrimination claims. See Motion at 5. Before moving on to their next argument, the Defendants note that, as Hyman's Charge named only New Mexico State University, his claims against the individual defendants should be dismissed. See Motion at 5 (citing Bates v. N.M. Corr. Dep't, No. CIV 08-1013 JB/RLP, 2010 WL 4339367, at *14 (D.N.M. Sept. 30, 2010)(Browning, J.); Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996)).

The Defendants then contend that the Court must dismiss Count IV because immunity bars that claim. See Motion at 5. The Defendants explain that Hyman has brought an

interference-with-contract claim under the theory that the Defendants "'violate[d] [his] property rights to his position as a distinguished achievement professor.'" Motion at 5 (quoting Complaint ¶ 25, at 10)(first alteration added, second alteration in Motion). The Defendants argue that, as a government entity and public employees, they are immune from any tort liability, except any liability that has been explicitly waived under the New Mexico Torts Claim Act, Motion at 5 (citing N.M. Stat. Ann. § 41-4-4), and "immune from any action based on a verbal or unwritten promise, such as the nebulous 'employment relationship' identified by [Hyman]," Motion at 5 (citing N.M. Stat. Ann. § 37-1-23(A) and quoting Complaint ¶ 26, at 10).

**3.    Response.**

Hyman responded.  See Plaintiff's Response to Defendants' Partial Motion to Dismiss Plaintiff's Complaint, filed March 22, 2019 (Doc. 16)("Response"). Hyman first acknowledges that the Defendants have provided the correct legal standard in their Motion and asserts that his Complaint has met that standard.  See Response at 3.  Hyman then responds to the Defendants' argument that the Court should dismiss Counts I, III, and V, because Hyman did not exhaust his administrative remedies as to these claims.  See Response at 3.  Hyman argues that he did not learn that "the treatment against him was motivated" by the discrimination alleged in Counts I, III, and V until after he had filed his Charge.  See Response at 3.  He contends that he "thus was in a 'Catch 22'" "[g]iven the deadline to file a lawsuit." Response at 3.  Hyman then argues that "the principle of judicial efficiency" justifies the Court permitting him to proceed with filing this suit instead of filing a second suit.  Response at 3-4.  Hyman finally argues that "he has been denied hearing and due process rights at every turn by NMSU." Response at 4.  He illustrates his statement with two examples: (i) NMSU denied him a hearing when he used the Faculty

Grievance Procedure; and (ii) he was denied a "full evidentiary hearing" after being promised a hearing before the Provost. Response at 4.

Finally, Hyman responds to the Defendants' contention that the Court must dismiss Count IV, because immunity bars it. Hyman characterizes the Defendants' argument that Hyman did not identify the written contract that was purportedly breached as "ridiculous in the extreme," because the Defendants know that Hyman is a tenured professor and, as his employer, NMSU possesses all documents related to his employment. See Response at 5. He then addresses the Defendants' argument that the New Mexico Tort Claims Act ("NMTCA") bars the tort claim.[3] Hyman says, without citation, that the NMTCA does not permit governmental employees "to act with reckless disregard of federal law," because "[s]uch actions are obviously ultra vires and not covered." Response at 5. He says that, when extrapolated, the Defendants' argument would justify a "governmental entity [] commit[ting] battery against an individual on more than one occasion" without legal repercussion. Response at 5. Hyman also addresses the Defendants' argument that a contractual claim similarly would be barred under N.M. Stat. Ann § 37-1-23(A). See Response at 5. Hyman argues that the Defendants are in possession of documents that form a contract between Defendants and Hyman. See Response at 5.

**4.     Reply.**

_____

[3]Although Hyman references the New Mexico Tort Claims Act, he cites N.M. Stat. Ann § 37-1-23(A). The Court cannot determine from the surrounding text whether this citation is a typographical error or a conflation of N.M. Stat. Ann. § 41-4-4(A) and N.M. Stat. Ann § 37-1-23(A). Accordingly, the Court will give the benefit of the doubt to Hyman and treat his response as responding to both the Defendants' N.M. Stat. Ann. § 41-4-4(A) argument and N.M. Stat. Ann § 37-1-23(A) argument. The Court, therefore, summarizes Hyman's Response as accurately as it can while still clarifying the arguments.

The Defendants replied. <u>See</u> Defendants New Mexico State University, Board of Regents of New Mexico State University, Dan Howard, James Hoffman, Lauri Millot and Nancy Oretskin's Reply to Plaintiff's "Response to Defendants' Partial Motion to Dismiss Plaintiff's Complaint", filed April 5, 2019 (Doc. 18)("Reply"). First, the Defendants note that Hyman conceded that he has not filed an EEOC charge alleging gender or disability discrimination. <u>See</u> Reply at 2. Defendants contend that Hyman's complaint alleges "specific, discrete acts" of gender and disability discrimination, none of which are included in his Charge.[4] <u>See</u> Reply at 2-3. The Defendants note that there are no exceptions to the exhaustion requirement for judicial efficiency or for the Defendants' awareness of the complaints. <u>See</u> Reply at 3. The Defendants state that, accordingly, the Court must dismiss Counts I, II, and V, which are rooted in these acts of gender and disability discrimination. <u>See</u> Reply at 3. The Defendants state that, moreover, Hyman must refile his EEOC Charge with the new claims before he brings another action. <u>See</u> Reply at 4.

The Defendants then counter Hyman's interference-with-contract assertion, which they summarize as: "because Defendants know that plaintiff is a tenured professor at NMSU, and are aware of 'numerous documents. . . that constitute a contract', plaintiff's claim is viable." Reply at 4 (quoting Response at 4)(punctuation as in Reply). They address this claim first as a tort claim and then as a contract claim. <u>See</u> Reply at 4-5. As a tort claim, Defendants argue that this claim fails because it does not fall under any of the waiver exceptions to the NMTCA. <u>See</u> Reply at 4-5 (citing N. M. Stat. Ann. § 41-4-5:12; <u>El Dorodo Utils., Inc., v. Eldorado Area Water</u>

_____

[4]Defendants note that, although Hyman states that he learned after filing his EEOC claim that his gender and disability were additional motivations for the discrimination against him, his gender and disability discrimination claims "involve[d] different actions allegedly carried out by different individuals." Reply at 4 n.1.

and Sanitation Dist., 2005-NMCA-036, ¶ 24, 109 P.3d 305; Billy v. Curry Cty. Bd. of Cty. Cmm'rs, No. 2:13-CV-0032 MCA/LAM, 2014 WL 11430973, at *6-9 (D.N.M. Sept. 30, 2014)(Armijo, C.J.).  As a contract claim, Defendants argue that this claim fails because Hyman does not provide a written contract that waives governmental immunity.  See Reply at 5 (citing N.M. Stat. Ann. § 37-1-23(A); Avalos v. Bd. of Regents of N.M. State Univ., 2017-NMCA-082, ¶ 3, 406 P.3d 551).  The personnel file documents Hyman proffered, Defendants argue, are insufficient to demonstrate a written contract for rule 12(b)(6) of the Federal Rules of Civil Procedure purposes or for waiver of immunity under N.M. Stat. Ann. 37-1-23(A) purposes.  See Reply at 65.

Last, Defendants address the scope-of-employment argument.  See Reply at 5.  The Defendants contend that this "argument is contravened" by Hyman stating that Count IV is alleged against individual defendants "'in their capacity as officers of New Mexico State University.'"  Reply at 6. (quoting Complaint ¶ 25, at 10).  The Defendants further argue that Hyman does not provide any facts that demonstrate that the Defendants were acting outside the scope of their employment.  See  Reply at 6.

5.      **The December 19, 2019, Hearing.**

The Court held a hearing on December 19, 2019.  See Transcript of Hearing at 1:7-10, taken December 19, 2019  (Court)("Dec. 19 Tr.").[5]  The Defendants asked the Court to dismiss

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

several counts because of Hyman's failure to exhaust administrative remedies and to dismiss the contract claim because of sovereign immunity. The Defendants elaborated on the contract claim, explaining that the claim is an interference-of-contract claim to which NMSU is entitled to immunity under N.M. Stat. Ann. § 37-1-23. See Dec. 19 Tr. at 4:17-18 (Rogers). The Court said that it believed that it had written an opinion on that statute and that it remembered construing the statute in a "fairly [] strict" way. Dec. 19 Tr. at 4:21-22 (Court). The Court also believed that its opinion held that the plaintiffs could not circumvent immunity except in cases of actual breach of contract. See Dec. 19 Tr. at 4:22-24 (Court). The Defendants commented on the dearth of relevant caselaw from the Court of Appeals of New Mexico, but they said that what caselaw they found "fell exactly where [the Court] described." Dec. 19. Tr. at 5:3-4 (Rogers). The Defendants noted that Hyman has not provided a written contract upon which to base his claim, see Dec. 19 Tr. at 5:9-19 (Rogers), and that, therefore, this claim should be dismissed, see Dec. Tr. at 5:20-21 (Rogers).

The Court then asked for clarification about the case's facts. See Dec. 19. Tr. at 6:1-3 (Court). The Defendants explain that "Mr. Hyman got crosswise with another professor in his department whose name is Nancy Oretskin, the bases for that dispute [are] not entirely clear from the record documents but there began to be a series of complaints." Dec. 19. Tr. at 6:7-12 (Rogers). The Defendants said that Hyman's and Oretskin's internal dispute, which appeared to be related to allocation of departmental resources, eventually "rose to the level of formal complaints." Dec. 19 Tr. at 6:19-7:3 (Rogers). The Defendants noted that these events are "all sort of out of the picture" now, because Hyman's Charge "really only talks about allegations that he's being treated differently because of his age and that he's being retaliated against for making

complaints about that." Dec. 19 Tr. at 7:3-8 (Rogers). The Court and the Defendants discussed Hyman's disability, which the Defendants concluded is "a social anxiety of some sort or perhaps some sort of a disorder that pertains to his ability or inability to interact with students on campus." Dec. 19 Tr. at 8:3-5 (Rogers). The Court asked the Defendants whether they agree with the Court's interpretation of Hyman's argument that, although exhaust of administrative remedies is generally required, the Court should grant Hyman a futility exception from this requirement. See Dec. 19 Tr. at 8:11-16 (Court).

The Defendants responded that they do not know whether Hyman is making a "futility argument" or "some sort of other equitable efficiency argument," but that, regardless, Hyman was asking the Court to grant an exception that "the law does not permit." Dec. 19. Tr. at 8:17-23 (Rogers). The Defendants explained to the Court that Hyman's bases for his complaint are "completely different" from his bases for his Charge in terms of "the protected classification[s]" and "the actors who commit the alleged discriminatory [] acts themselves." Dec. 19. Tr. at 9:9-15 (Rogers). The Defendants clarified that the Charge alleges age discrimination and retaliation, in contrast to his Complaint, which alleges gender discrimination, an ADA violation, and disability discrimination. See Dec. 19. Tr. at 9:23-10:9 (Rogers). The Defendants elaborated on the EEOC charge, explaining to the Court that Hyman neither checked the corresponding boxes nor set forth facts in his Charge to support his Complaint's claims. See Dec. 19. Tr. at 10:13-16 (Rogers). In response to the Court asking the Defendants whether the futility exception applies when a plaintiff has not checked the appropriate boxes, the Defendants explain that this situation, in which facts setting forth the claims were omitted from the Charge, does not fall under the futility exception. See Dec. 19. Tr. at 10:20-11:1 (Court, Rogers). The

Defendants responded that the futility exception usually applies when the plaintiff did not check the appropriate boxes, but the facts set forth in the charge are "close enough to what was later then later pled in the complaint." Dec. 19. Tr. at 10:13-16 (Rogers). It does not apply, the Defendants argued, when the Complaint alleges a "completely different set of circumstances and allegations that are presented in the charge." Dec. 19. Tr. at 12:1-3 (Rogers). The Defendants repeated its request that the Court dismiss these claims and the contract claim, and the Defendants admitted that they expect to move forward on the remaining claims. Dec. 19. Tr. at 12:7-12 (Rogers).

Hyman responded. See Dec. 19. Tr. at 19-20 (Aguirre). Hyman stated that Lincoln v. Burlington N. Santa Fe R.R., Inc., 900 F.3d 1166 (10th Cir. 2018)("Lincoln"), abrogated forty years of precedent "with regard to [the] idea that you had to check all of the boxes at the EEOC." Dec. 19. Tr. at 15:7-13 (Aguirre). Hyman stated that, because of that case, the Court has jurisdiction over this case and that the Defendants should reserve their affirmative defense for trial. See Dec. 19. Tr. at 15:19-16:1 (Aguirre). The Court disagreed with Hyman, stating that "it would defeat the whole purpose of the exhaustion requirement to wait [until] trial." Dec. 19. Tr. at 16:2-7 (Court). Hyman argued that an affirmative defense is a mixed issue of law and fact better saved for the jury. See Dec. 19. Tr. at 16:22-25 (Aguirre). The Court invited Hyman to provide caselaw supporting that notion, but it still concluded that it needed to resolve a failure-to-exhaust affirmative defense early in the case. See Dec. 19. Tr. at 17:17-18:1 (Court).

Hyman argued that Lincoln overruled all of the Defendants' cited caselaw. See Dec. 19. Tr. at 18:2-7 (Aguirre). The Court clarified that, although Lincoln stated the exhaustion requirement was not jurisdictional, Lincoln did not overrule all the prior caselaw. See Dec. 19.

Tr. at 18:8-14 (Court). The Court inquired as to why Hyman took issue with exhausting his administrative remedies. See Dec. 19. Tr. at 18:8-14 (Aguirre). Hyman stated that he did not think the statute required him to file a new EEOC charge, because he "uncover[ed] underlying facts [that] also support other theories of causes of action." Dec. 19. Tr. at 18:21-19:1 (Aguirre). Hyman believed his situation is "novel," because Hyman is still teaching at NMSU after filing his Charge and therefore is still subject to harassment. Dec. 19. Tr. at 18:8-14 (Aguirre). Hyman elaborated on the uniqueness, explaining that he "has attempted to avail himself" of internal "administrative procedures," but that he has been "denied hearings on these attempts to use the faculty grievance policy, the office institutional policy, and then has suffered more adverse actions in relation to his position at New Mexico State." Dec. 19. Tr. at 20:11-21 (Aguirre). In response to the Court's inquiry as to these incidents' location in the record, Hyman demurred and said that "[o]bviously when we go through discovery all of these things would be entered into the record." Dec. 19. Tr. at 21:3-5 (Aguirre). He presented exhibits that he brought: (i) Exhibit A's first document, Hyman's curriculum vitae, which he says shows Hyman's "exceptional" publishing record and academic track; (ii) Exhibit A's second document, an email from the Provost to Hyman that shows that Hyman was named a distinguished professor; and (iii) Exhibit B, which shows that Hyman was the most cited scholar in NMSU in a five-week period and the most cited scholar in the College of Business. See Dec. 19. Tr. at 21:6-23:6 (Aguirre). Hyman then explained to the Court that his contract consists of a series of documents, "all of which [Hyman] has attempted to get from the university at various times." Dec. 19. Tr. at 23:7-12 (Aguirre). Hyman argued that tenure has been held to be a property or contractual right. See Dec. 19. Tr. at 23:12-14 (Aguirre). Hyman said that he could not identify any one document that

constitutes his employment contract and analogized his employment arrangement to "a UCC course of dealing type of arrangement." Dec. 19. Tr. at 23:16-21 (Aguirre).

The Court asked Hyman whether he had read the Court's opinion regarding sovereign immunity for contract claims. See Dec. 19. Tr. at 23:22-25 (Aguirre). Hyman indicated that he had read it, but that this case is distinguishable, because these individuals were acting outside their employment's scope. See Dec. 19. Tr. at 24:4-8 (Aguirre). The Court and Hyman tried to clarify whom Hyman is alleging engaged in tortious interference with contract. See Dec. 19. Tr. at 24:12-25:15 (Aguirre, Court). Hyman stated that the petition makes it "fairly clear" that he is alleging that Hoffman, Oretskin, and "the OIE director" engaged in tortious interference with contract. Dec. 19. Tr. at 25:16-20 (Aguirre). He pointed to Exhibit C, which is a series of emails showing that an unnamed person asked Hyman to retroactively file FMLA leave for missing class and then denied that leave. See Dec. 19. Tr. at 25:21-26:5 (Aguirre). Hyman repeated that, when he asked Human Resources for a job description, he "was told that there wasn't a job description for tenured professors at New Mexico State." Dec. 19. Tr. at 26:13-16 (Aguirre). Hyman then highlighted Exhibit E, which is his annual performance evaluation and emails about this evaluation. See Dec. 19. Tr. at 27:11 (Aguirre). He alleged that these documents "show a pattern of discrimination that's continuing pervasive[,] hostile[,] and outgoing." Dec. 19. Tr. at 27:11-13 (Aguirre). He implied that this annual performance evaluation contravenes NMSU's position that it does not have a job description for tenured professors. See Dec. 19. Tr. at 27:18-20 (Aguirre). He then listed times that NMSU has not addressed his concerns: (i) Hyman alerted his department head and dean about bullying in the doctorate program, which was ignored even though NMSU took up the complaint from the alleged bully; (ii) NMSU denied

Hyman a hearing on the alleged bully's complaint and did not provide Hyman "the substance of those allegations"; and (iii) the Office of Institutional Equity has not responded to his "repeated[] attempt[s]" to engage in his rights under the Faculty Handbook. Dec. 19. Tr. at 27:4-28:11 (Aguirre).

Hyman then turned to the ADA violation. He alleged that the Office of Institutional Equity and his department head provided him accommodations for various medical conditions for several years. See Dec. 19. Tr. at 28:18-29:4 (Aguirre)(citing Exhibits H, I, J). He argued that these accommodations are precedential, but that the Office of Institutional Equity and the Office of Legal Counsel are not treating these accommodations as precedential. See Dec. 19. Tr. at 29:9-16 (Aguirre). Hyman stated that he could refile a claim with the EEOC, because these actions are ongoing, but that this course of action would result in a second lawsuit. See Dec. 19. Tr. at 30:1-8 (Aguirre). The Court said that the law may dictate that Hyman file another charge, especially because of Jones and the rebuttable presumption about checking the boxes on the EEOC charge. See Dec. 19. Tr. at 30:20-31:1 (Court)(citing Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1183 (10th Cir. 2007)). When Hyman responded that this case's factual circumstances are unique, the Court asked him to clarify what he believes to be unique. See Dec. 19. Tr. at 31:1-5 (Aguirre). Hyman said that the Defendants' aggression in their retaliation against him is, in his experience, unprecedented. See Dec. 19. Tr. at 31:8-17. Hyman laid out what he believes to be the Court's three options: (i) allow Hyman to file another charge with the EEOC; (ii) stay the proceedings and permit him to file another charge with the EEOC and then amend his petition; or (iii) proceed to trial and face a second litigation after Hyman files another charge with the EEOC. See Dec. 19. Tr. at 31:17-32:1 (Aguirre).

The Defendants rebutted.  See Dec. 19. Tr. at 33:7-8 (Court, Rogers).  They began with Count IV, noting that Hyman's Count IV allegations are against NMSU and the individual Defendants, so it is not an ultra vires count.  See Dec. 19. Tr. at 33:11-14 (Rogers).  The Defendants emphasized that the term "ultra vires" is "nowhere in this petition."  Dec. 19. Tr. at 33:15-17 (Court, Rogers). The Defendants reiterated that there is no written contract upon which they could have waived immunity.  See Dec. 19. Tr. at 32:24-43:3 (Rogers).  The Defendants then described the allegations in the Charge as "a very brief narrative that is addressed towards one instance involving something that happened in November 2016 where Mr. Hyman was allegedly accused of violating the ADA rights of a student."  Dec. 19. Tr. at 33:8-12 (Rogers). The Defendants explained that Hyman complained that the investigation took too long, which the Defendants do not appear to contest.  See Dec. 19. Tr. at 33:12-16 (Rogers).  The Defendants also explain that Hyman alleged that he received mixed information from NMSU's general counsel and Office of Institutional Equity.  See Dec. 19. Tr. at 33:12-16 (Rogers).  Hyman alleged age discrimination because of this incident, because of NMSU's refusal to permit Hyman to appeal, and because "'it seems that the university is doing everything they can to get rid of all the older and more tenured professors who make more money.'"  See Dec. 19. Tr. at 33:16-24 (Rogers)(quoting Charge at 1).  The Defendants noted that the Charge further alleges that Millot and other NSMU members were retaliating against Hyman by not permitting him "the opportunity to defend [his] innocence."  Dec. 19. Tr. at 33:23-34:3 (Rogers).  The Defendants noted that these are the only allegations in the Charge.  See Dec. 19. Tr. at 34:5 (Rogers).  The Defendants compared the Charge with the petition, which alleges "completely different acts" against "completely different actors."  Dec. 19. Tr. at 34:34:9-11 (Rogers).  The Defendants

repeated their contention that the differences between the Charge and the Complaint render any futility exception inapplicable. See Dec. 19. Tr. at 34:22-35:2 (Rogers). The Defendants dismissed any question of timeliness as irrelevant to the hearing and echoed their agreement with the Court's statement that Lincoln permits them to make an affirmative defense at this stage in the proceedings. See Dec. 19. Tr. at 35:17-23 (Rogers). The Defendants stated that Hyman's exhibits are irrelevant to the question whether he exhausted his administrative remedies. See Dec. 19. Tr. at 36:5-10 (Rogers).

The Defendants opposed the Court granting a stay and asked the Court to dismiss the counts instead. See Dec. 19. Tr. at 36:22-37:3 (Rogers). Although the Defendants objected to the ad hoc nature of Hyman's exhibits, they have no issue with the Court considering the exhibits for the Motion's purposes. See Dec. 19. Tr. at 38:14-39:18 (Court, Rogers). In response to the Court's questioning what steps Hyman next could take, the Defendants stated that the law requires Hyman to return to the EEOC and file a charge with the allegations from his Complaint. See Dec. 19. Tr. at 40:1-16 (Court, Rogers). The Defendants stated that Hyman could file administrative grievances internally. See Dec. 19. Tr. at 41:1-2 (Rogers). The Defendants say that they will benefit from Hyman exhausting his administrative remedies by being able to investigate his allegations themselves. See Dec. 19. Tr. at 42-22-25 (Rogers). The Court indicated its inclination to grant the Motion. See Dec. 19. Tr. at 44:10-12 (Court).

6.      **The December 31, 2019, Hearing.**

The Court held a second hearing. See Draft Transcript of Hearing, taken December 31, 2019 ("Dec. 31 Tr."). At the hearing, the Court indicated that it was inclined to grant the

Motion.  <u>See</u> Dec. 31. Tr. at 2:21-25 (Court).  The Defendants decided that they would not oppose a motion to stay the case.  <u>See</u> Dec. 31 Tr. at 7:22-8:23 (Rogers).

## LAW REGARDING MOTIONS TO DISMISS UNDER 12(B)(1) OF THE FEDERAL RULES <u>OF CIVIL PROCEDURE</u>

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  <u>Henry v. Office of Thrift Supervision</u>, 43 F.3d 507, 511 (10th Cir. 1994)(citing <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541 (1986); <u>United States v. Nixon</u>, 418 U.S. 683 (1974); <u>Tafoya v. U.S. Dep't of Justice, Law Enf't Assistance Admin.</u>, 748 F.2d 1389, 1390 (10th Cir. 1984)).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  "[Because] federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction."  <u>U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc.</u>, 190 F.3d 1156, 1160 (10th Cir. 1999).  Rule 12(b)(1) allows a party to raise, by motion, the defense of the court's "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based."  <u>Ruiz v. McDonnell</u>, 299 F.3d 1173, 1180 (10th Cir. 2002).

On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  <u>See</u> <u>Ruiz v.</u>

McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.), cert. denied, 454 U.S. 897, 102 (1981).  But when the attack is factual, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a rule 56 motion.  Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)(citations omitted).  Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D.N.M. March 11, 2009)(Browning, J.), aff'd on other grounds by 634 F.3d 1170 (10th Cir. 2011).  See World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp., 362 F. Supp. 3d 1021, 1086-87 (D.N.M. 2019)(Browning, J.).  The United States Court of Appeals for the Fifth Circuit has stated:

> "[T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  When making a rule 12(b)(1) motion, a party may go beyond the complaint's allegations to challenge the facts upon which jurisdiction depends and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d at 1003.  In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.

See <u>Holt v. United States</u>, 46 F.3d at 1003 (citing <u>Wheeler v. Hurdman</u>, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56. <u>See Franklin Sav. Corp. v. United States</u>, 180 F.3d 1124, 1129 (10th Cir. 1999); <u>Tippett v. United States</u>, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" <u>Davis ex rel. Davis v. United States</u>, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting <u>Sizova v. Nat'l Inst. of Standards & Tech.</u>, 282 F.3d 1320, 1324 (10th Cir. 2002)).  "When subject-matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined." <u>Garcia v. United States</u>, No. CIV 08-0295, 2009 WL 1300938, at *9 (D.N.M. March 30, 2009)(Browning, J.)(citing <u>Wheeler v. Hurdman</u>, 825 F.2d at 259; <u>Holt v. United States</u>, 46 F.3d at 1003).  <u>See De Baca v. United States</u>, 399 F. Supp. 3d 1052, 1156-60 (D.N.M. 2019)

## LAW REGARDING MOTIONS TO DISMISS UNDER 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994)(citing <u>Williams v. Meese</u>, 926 F.2d 994, 997 (10th Cir. 1991)).  The complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual

allegations in the complaint, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the plaintiff's favor.  See Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555.  "'At the motion-to-dismiss stage, the court does not weigh the evidence, and "is interested only in whether it has jurisdiction and whether the [p]laintiffs plead a claim to relief that is plausible on its face.'"  Rivero v. Bd. of Regents of Univ. of New Mexico, No. CIV 16-0318 JB\SCY, 2019 WL 1085179, at *47 (D.N.M. March 7, 2019)(Browning, J.)(quoting Begay v. Pub. Serv. Co. of N.M., 710 F. Supp. 2d 1161, 1199 (D.N.M. 2010)(Browning, J.)).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). This standard requires "'more than a sheer possibility that a defendant has acted unlawfully.'" Nowell v. Medtronic Inc., 372 F. Supp. 3d 1166, 1245 (D.N.M. 2019)(Browning, J.)(quoting Ashcroft v. Iqbal, 556 U.S. at 678). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). "A court will not construe a plaintiff's pleadings 'so liberally that it becomes his advocate.'" Rivero v. Bd. of Regents of Univ. of New Mexico, 2019 WL 1085179, at *48 (quoting Bragg v. Chavez, No. CIV 07-0343 JB/WDS, 2007 WL 5232464, at *25 (D.N.M. Aug. 2, 2007)(Browning, J.)). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). See Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs, 278 F. Supp. 3d 1245, 1259 (D.N.M. 2017)(Browning, J.).

"When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017)(quoting Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004)). There are

three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); (ii)"documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002); and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. See Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d at 1103-04 (holding that the district court did not err by reviewing a seminar recording and a television episode on a rule 12(b)(6) motion, which were "attached to or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their accuracy and authenticity"). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).

In Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the motion." 627 F.3d at 1186. The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment." 627 F.3d at 1186-87. In other cases, the Tenth Circuit has emphasized that, "[b]ecause the district court considered facts outside of the complaint ... it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)." Nard

v. City of Okla. City, 153 F. App'x 529, 534 n.4 (10th Cir. 2005)(unpublished).[6]  In Douglas v. Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), the Tenth Circuit addressed an untimely filed charge with the EEOC -- which missed deadline the Tenth Circuit analogized to a statute of limitations -- and concluded that, because the requirement is not jurisdictional, the district court should have analyzed the question under rule 12(b)(6), and "because the district court considered evidentiary materials outside of Douglas' complaint, it should have treated Norton's motion as a motion for summary judgment."  Douglas v. Norton, 167 F. App'x at 704-05.

The Court has previously ruled that, when a plaintiff references and summarizes defendants' statements in a complaint, the Court cannot rely on documents containing those statements that the defendants attach in their briefing.  See Mocek v. City of Albuquerque, No. CIV 11-1009 JB/KBM, 2013 WL 312881, at *50-51 (D.N.M. Jan. 14, 2013)(Browning, J.).  The Court reasoned that the complaint did not incorporate the documents by reference, nor were the documents central to the plaintiff's allegations in the complaint, because the plaintiff cited the

_____

[6]Nard v. City of Oklahoma City is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, ... [a]nd we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that the unpublished opinions cited in this Memorandum Opinion and Order assist the Court in the writing of this Memorandum Opinion and Order.

statements only to attack the defendant's reliability and truthfulness. See 2013 WL 312881, at *50-51. The Court has also previously ruled that, when determining whether to toll a statute of limitations in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters attached to a motion to dismiss, which show that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired. See Great Am. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500, at *3, *22-23 (D.N.M. Aug. 23, 2012)(Browning, J.)("Crabtree"). The Court in Crabtree determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the sufficiency of its contents alone, as the complaint did not incorporate the documents by reference or refer to the documents. See 2012 WL 3656500, at *22-23.

On the other hand, in a securities class action, the Court has ruled that a defendant's operating certification, to which that case's plaintiffs refer in their complaint, and which was central to whether the plaintiffs adequately alleged a loss, falls within an exception to the general rule, so the Court may consider the operating certification when ruling on the defendant's motion to dismiss without converting the motion into one for summary judgment. See Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Secs. Tr. 2006-3, 825 F. Supp. 2d 1082, 1150-51 (D.N.M. 2011)(Browning, J.). See, e.g., S.E.C. v. Goldstone, 952 F. Supp. 2d 1060, 1217-18 (D.N.M. 2013)(Browning, J.)(considering, on a motion to dismiss, electronic mail transmissions referenced in the complaint as "documents referred to in the complaint," which are "central to the plaintiff's claim" and whose authenticity the plaintiff did not challenge); Mata v. Anderson, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning, J.)(relying on documents outside of the complaint because they were "documents that a court can appropriately view as either part of the

public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute").

## LAW REGARDING DOCUMENTS OUTSIDE THE PLEADINGS ON A MOTION TO DISMISS

Generally, the sufficiency of a complaint must rest on its contents alone. See Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010); Gossett v. Barnhart, 139 F. App'x 24, 24 (10th Cir. 2005)(unpublished)("In ruling on a motion to dismiss, the district court is limited to the facts pled in the complaint."). Emphasizing this point, the Tenth Circuit, in Carter v. Daniels, 91 F. App'x 83 (10th Cir. 2004)(unpublished), stated: "When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint." 91 F. App'x at 85. There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322; (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d at 941; and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001). In Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the [motion to dismiss]." 627 F.3d at 1186. The Tenth Circuit held that "[s]uch reliance was improper" and

that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment." Gee v. Pacheco, 627 F.3d at 1186-87. In other cases, the Tenth Circuit has emphasized that, "[b]ecause the district court considered facts outside of the complaint, however, it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)." Nard v. City of Okla. City, 153 F. App'x at 534 n.4. In Douglas v. Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), the Tenth Circuit addressed an untimely filed charge with the Equal Employment Opportunity Commission -- which the Court analogized to a statute of limitations -- and concluded that, because the requirement was not jurisdictional, the district court should have analyzed the question under rule 12(b)(6), and "because the district court considered evidentiary materials outside of Douglas' complaint, it should have treated Norton's motion as a motion for summary judgment." 167 F. App'x at 704-05.

The Court has previously ruled that, when determining whether to toll a statute of limitations in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters attached to a motion to dismiss, which evidence that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired, in the Court's ruling. See Crabtree, 2012 WL 3656500, at *3, **22-23. The Court determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the sufficiency of its contents alone, as the complaint did not incorporate the documents by reference, or refer to the documents. See 2012 WL 3656500, at **22–23; Mocek v. City of Albuquerque, No. CIV 11-1009, 2013 WL 312881, at *50 (D.N.M. Jan. 14, 2013)(Browning, J.)(refusing to consider statements that were not "central to [the Plaintiff's] claims").

On the other hand, in a securities class action, the Court has found that a defendant's operating certification, to which plaintiffs refer in their complaint, and which is central to whether the plaintiffs adequately alleged a loss, falls within an exception to the general rule, and the Court may consider the operating certification when ruling on the defendant's motion to dismiss without converting the motion into one for summary judgment. See Genesee Cty Emps.' Retirement Sys. v. Thornburg Mortg. Secs. Tr. 2006–3, 825 F.Supp.2d at 1150-51; Mata v. Anderson, 760 F. Supp. 2d at 1101 (relying on documents outside of the complaint because they were "documents that a court can appropriately view as either part of the public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute"); Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs, 278 F. Supp. 3d at 1259-60.

### LAW REGARDING DISABILITY DISCRIMINATION CLAIMS UNDER THE ADA

The ADA prohibits employers from discriminating against employees because of disability. See Punt v. Kelly Servs., 862 F.3d 1040, 1047-48 (10th Cir. 2017). An employee can bring two ADA discrimination claims: (i) disparate treatment, in which the employee alleges her employer treated her differently than other employees because of the employee's disability; and (ii) a failure to accommodate, in which the employee alleges that the employer did not "provide reasonable accommodations for a disability." Sorenson v. Campbell Cty. Sch. Dist., 769 F. App'x 578, 583 (10th Cir. 2019)(unpublished)(quoting Punt v. Kelly Servs., 862 F.3d at 1048)(citing Davidson v. Am. Online, Inc., 337 F.3d 1179, 1188 (10th Cir. 2003)). The Tenth Circuit charges courts to look at the totality of the circumstances when classifying the claim, focusing on "'the allegations in the plaintiff's complaint.'" Sorenson v. Campbell Cty. Sch. Dist., 769 F. App'x at 583 (quoting Punt v. Kelly Servs., 862 F.3d at 1049).

## LAW REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES FOR AN EEOC CHARGE

Plaintiffs must exhaust both Title VII of the Civil Rights Act of 1964 and New Mexico Human Rights Act ("NMHRA") N.M. Stat. Ann. §§ 28-1-1 to -15, claims before being brought in federal court. Title VII creates a work-sharing deferral system between the EEOC and the states that have their own employment discrimination legislation. See 42 U.S.C. § 2000e-5(c), (d). In the states that possess their own employment discrimination legislation, the EEOC must generally "defer" to state or local remedies. EEOC v. Superior Temp. Servs., Inc., 56 F.3d 441, 447 (2d Cir. 1995)(quoting 42 U.S.C. § 2000e-5(c), (d)). The NMHRA places New Mexico among those states that have their own employment discrimination legislation and contact agencies. See 29 C.F.R. § 1601.74 (2005). In New Mexico, a complainant can, upon meeting filing requirements, proceed with his or her grievance either through the EEOC or through the New Mexico Human Rights Division ("NMHRD"). See Mitchell-Carr v. McLendon, 1999-NMSC-025, ¶¶ 10-14, 980 P.2d 65, 69-70. "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Once a person elects to proceed with his or her complaint under state law, the NMHRA controls the grievance procedures for resolving the complaint. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 109.

Whether complainants decide to pursue their grievances with the EEOC or with the NMHRD, they must exhaust their respective regimes' administrative remedies before seeking judicial review. See Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)("Exhaustion of

administrative remedies is a jurisdictional prerequisite to suit under Title VII."); <u>Mitchell-Carr v. McLendon</u>, 1999 NMSC-025, ¶ 20, 980 P.2d at 71 ("[E]xhaustion of administrative remedies is a prerequisite to suit under the NMHRA, and a failure to exhaust administrative remedies may mean that the court lacks subject-matter jurisdiction.")(citing <u>Luboyeski v. Hill</u>, 1994-NMSC-032, ¶ 7, 872 P.2d 353, 355 (1994)). Exhaustion of administrative remedies is central to Title VII's statutory scheme, because it provides the EEOC and state deferral agencies with the first opportunity to investigate discriminatory practices, and enables them to perform their roles of obtaining voluntary compliance and of promoting conciliatory efforts. <u>See</u> <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 180-81 (1989); <u>Williams v. Little Rock Mun. Water Works</u>, 21 F.3d 218, 222 (8th Cir. 1994).

**1.      The Exhaustion of Administrative Remedies under Title VII.**

Title VII prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).   "Under long-standing [Tenth] [C]ircuit precedent, supervisors and other employees may not be held personally liable under Title VII."   <u>Williams v. W.D. Sports, N.M., Inc.</u>, 497 F.3d 1079, 1083 n. 9 (10th Cir. 2007).   <u>See</u> <u>Haynes v. Williams</u>, 88 F.3d 898, 899 (10th Cir. 1996)("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.").   Before commencing a Title VII action in federal court in a state with an agency empowered to investigate employment discrimination, like the New Mexico Department of Labor, Human Rights Division, "a plaintiff first must exhaust administrative remedies by

filing a charge of discrimination with the EEOC within 300 days of the allegedly unlawful

employment practice."  Castaldo v. Denver Pub. Sch., 276 F. App'x 839, 841 (10th Cir.

2008)(citing 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); Proctor v. United Parcel Serv.,

502 F.3d 1200, 1206 & n. 3 (10th Cir. 2007))(explaining filing times in deferral states, which are

those states that have "an agency empowered to investigate employment discrimination"). To

exhaust administrative remedies, an individual claimant must: (i) timely file a charge of

discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive

notice of the right to sue.  See 42 U.S.C. §§ 2000e-5(b), (c), (e), (f)(1); Simms v. Okla. ex rel.

Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999).  "[A]

plaintiff normally may not bring a[n] ... action based upon claims that were not part of a

timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."  Simms v.

Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1321.

To be timely, a plaintiff must file the charge with the EEOC within 180 days or with a

state agency within 300 days of the complained-of conduct.  See 42 U.S.C. § 2000e-5(e)(1); 29

C.F.R. § 1601.13 (1998); Simms v. Okla. ex. rel. Dep't of Mental Health & Substance Abuse

Servs., 165 F.3d at 1327; Gunnell v. Utah Valley St. Coll., 152 F.3d 1253, 1260 n.3 (10th Cir.

1998). Once an individual receives notice of the right to sue, he or she has ninety days in which

to file suit.  See 42 U.S.C. § 2000e-(f)(1).

**2.      The Exhaustion of Administrative Remedies Is a Jurisdictional Requirement.**

In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite

to filing a Title VII action.  See Jones v. United Parcel Serv., Inc., 502 F.3d at 1183; Alcivar v.

Wynne, 268 F. App'x 749, 753 (10th Cir. 2008)("The Tenth Circuit has consistently held that

'exhaustion . . . is a jurisdictional prerequisite to suit under Title VII -- not merely a condition precedent to suit.'")(quoting Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005)); Ransom v. U.S. Postal Service, 170 F. App'x 525, 527 & n.2 (10th Cir. 2006)("[A] claimant under the Rehabilitation Act . . . is required to present her claims to the appropriate EEO agency before filing suit.")(citing 5 U.S.C. § 7702(a)(2)); Wells v. Shalala, 228 F.3d 1137, 1142-43 (10th Cir. 2000); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996) ("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII."); Romero v. Union Pac. R.R., 615 F.2d 1303, 1303 (10th Cir. 1980).

Without such a filing, federal courts lack subject-matter jurisdiction to entertain discrimination claims under that statutes, and a rule 12(b)(1) motion to dismiss is procedurally proper. See Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997); Carmody v. SCI Colo. Funeral Servs., Inc., 76 F. Supp. 2d 1101, 1103-04 (D. Colo. 1999)(Kane, J.). When a defendant brings a motion to dismiss for lack of subject-matter jurisdiction under rule 12(b)(1) based on a plaintiff's failure to exhaust administrative remedies in a timely manner, a court "analyze[s] th[e] case under 12(b)(6) of the Federal Rules of Civil Procedure," unless a court considers materials outside the complaint, in which case "it should . . . treat [ ][the] motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." Douglas v. Norton, 167 F. App'x at 704-05.

### a.    The Scope of the EEOC Charge.

"A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." MacKenzie v. City & Cty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005). "We

liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186. "This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel." Mitchell v. City & Cty. of Denver, 112 F. App'x 662, 667 (10th Cir. 2005). "[T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186. "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186 (citing Gunnell v. Utah Valley State Coll. 152 F.3d at 1260). "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim." Jones v. United Parcel Service, Inc., 502 F.3d at 1186.

Liberally construing EEOC complaints requires courts to look beyond the formalities of the complaint form. The Tenth Circuit held in Jones v. United Parcel Service, Inc. that, while Jones checked "no" to the questions, "[d]o you believe that the employer regarded you as disabled?" and "did you advise you employer that you required an accommodation?", Jones' allegations that UPS interfered with a medical evaluation to ensure Jones was not released to return to work, that UPS did not permit Jones to return to work despite releases from two doctors, and that Jones checked a box for retaliation, should have triggered an administrative investigation into whether UPS discriminated against Jones because he was disabled and whether UPS retaliated against him. 502 F.3d at 1182, 1186-87. Because Jones checked "no" in response to the question whether he advised his employer he needed accommodation, and because the text of the charge did not contain facts that would prompt an investigation of such a

claim, the Tenth Circuit held that Jones did not exhaust his administrative remedies with respect to his failure-to-accommodate claim.  502 F.3d at 1187.

In Annett v. University of Kansas, 371 F.3d 1233 (10th Cir. 2004), the Tenth Circuit declined to consider Annett's contention that receiving the position of adjunct lecturer versus adjunct professor constituted a retaliation action, because she failed to exhaust her administrative remedies.  See id. at 1238.  The Tenth Circuit considered Annett's charge of discrimination filed September 6, 2000, and her "complaint narrative" submitted on May 31, 2000, and found no reference to a distinction between "lecturer" and "professor" as probative of discrimination or retaliation.  371 F.3d at 1238.  Annett's complaint stated: "I was given an Adjunct faculty position, but no Principal Investigator status, which prevents me from obtaining grants."  371 F.3d at 1238.  Annett's complaint narrative stated: "My own position as an Adjunct Faculty member at KU was downgraded to prevent me from submitting grants that could act as an alternative source of income."  371 F.3d at 1238.  The Tenth Circuit held that it could not conclude "that this sentence represents the distinction between being appointed an adjunct lecturer versus an adjunct professor in 1999 or 2000."  371 F.3d at 1238.  Furthermore, the Tenth Circuit noted that it "lack[ed] jurisdiction to review Title VII claims that are not part of a timely-filed EEOC charge," including actions that occurred after the charge was filed.  371 F.3d at 1238 (citing Seymore v. Shawver & Sons, Inc., 111 F.3d at 799).

The Tenth Circuit has stated

> Previously, we would proceed to examine whether the alleged employment action, provided it occurred after the filing of the EEOC charge, was "like or reasonably related to the allegations of the EEOC charge."  However, our recent holding in Martinez v. Potter, has foreclosed this line of inquiry.  In Martinez v. Potter, 347 F.3d 1208 (10th Cir. 2003), we abrogated the continuing violation exception to our jurisdictional requirements to allege a claim of

> retaliation and held that "unexhausted claims involving discrete employment actions are no longer viable." In so doing, we relied on National R.R. Passenger Corp. v. Morgan, which concluded that each discrete retaliatory action constitutes its own unlawful employment practice for which administrative remedies must be exhausted, and we applied National R.R. Passenger Corp. v. Morgan to incidents occurring after an employee's filing of an EEO complaint, and we applied National R.R. Passenger Corp. v. Morgan to incidents occurring after an employee's filing of an EEO complaint. Annett v. Univ. of Kan., 371 F.3d at 1238 (internal quotations and citations omitted).

Thus, the Tenth Circuit dismissed Annett's claim for failure to exhaust administrative remedies.

Annett v. University of Kansas, 371 F.3d 1233, 1238 (10th Cir. 2004).

### b. Each Discrete Incident Must be Exhausted.

Before 2002, under the "continuing violation" theory, the Tenth Circuit recognized a limited exception to the exhaustion requirement "when the unexhausted claim is for discrimination like or reasonably related to the allegations of the EEOC charge." Simms v. Okla. ex. rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d at 1327 (internal citations and quotations omitted). The Tenth Circuit "construed the 'reasonably related' exception to include most retaliatory acts subsequent to an EEOC filing." 165 F.3d at 1327 (citing Seymore v. Shawver & Sons, Inc., 111 F.3d at 799). In Martinez v. Potter, however, the Tenth Circuit noted that the "Supreme Court's recent pronouncement in National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions." 347 F.3d at 1210. The Tenth Circuit's "decisions have unambiguously recognized Morgan as rejecting application of the 'continuing violation' theory." Martinez v. Potter, 347 F.3d at 1211 (citing Davidson v. America Online, Inc., 337 F.3d 1179 (10th Cir. 2003)). The Tenth Circuit in Martinez v. Potter stated:

We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable. *Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

347 F.3d at 1210 (internal citations and quotations omitted).

Thus, under National Railroad Passenger Corp. v. Morgan, each discrete act of discrimination must be administratively exhausted. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (internal citations and quotations omitted). In National Railroad Passenger Corp. v. Morgan, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought when those incidents of which the plaintiff complained occurred more than 300 days before the filing of the plaintiff's EEO complaint. See Martinez v. Potter, 347 F.3d at 1210. "The rule is equally applicable, however, to discrete claims based on incidents occurring after the filing of Plaintiff's EEO complaint." Martinez v. Potter, 347 F.3d at 1210-11. The Tenth Circuit has stated: "Our decisions have unambiguously recognized Morgan as rejecting application of the continuing violation theory." Martinez v. Potter, 347 F.3d at 1211 (internal quotations omitted).

In Jones v. United Parcel Service, the Tenth Circuit explained how the requirement that plaintiffs must exhaust each discrete claim works in conjunction with courts liberally construing EEOC charges. See 502 F.3d at 1186.

The next step in determining whether a plaintiff has exhausted her administrative remedies is to determine the scope of the allegations raised in the EEOC charge because [a] plaintiff's claim in federal court is generally limited by the scope of

the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC . . . . We emphasize, however, that our inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge. In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination of retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

Jones v. United Parcel Service, 502 F.3d at 1186 (internal quotation marks and citations omitted).

This Court has previously held that these principles demand that an act which occurs subsequent to the filing of the formal EEOC charge would not be included in the scope of the administrative investigation and would constitute its own "unlawful employment practice for which administrative remedies must be exhausted." Farley v. Leavitt, No. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *14 (D.N.M. Dec. 31, 2007)(Browning, J.)(quoting Jones v. United Parcel Serv., Inc., 502 F.3d at 1186)(internal quotation marks omitted). Tenth Circuit holdings support this conclusion. See Duncan v. Manager Dep't of Safety, 397 F.3d at 1314 (affirming dismissal of retaliation claim postdating plaintiff's EEO complaint, and stating: "Ms. Duncan did not file an additional EEOC charge alleging the retaliatory act however, and this failure to exhaust her administrative remedies is fatal to her claim"); Annett v. Univ. of Kan., 371 F.3d at 1238 ("Previously, we would proceed to examine whether the alleged employment action, provided it occurred after the filing of the EEOC charge, was 'like or reasonably related to the allegations of the EEOC charge'[;] [h]owever, our recent holding in Martinez v. Potter, has foreclosed this line of inquiry.").

     **c.**     **A Plaintiff Must Exhaust at Least One Related Act that Is the Basis of a Hostile-Work-Environment Claim.**

A different rule applies to hostile environment claims, for which "the continuing violation doctrine remains viable." _Semsroth v. City of Wichita_, 304 F. App'x 707, 722 (10th Cir. 2008)(unpublished). An employer creates a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." _Davis v. U.S. Postal Serv._, 142 F.3d 1334, 1341 (10th Cir. 1998)(quotations omitted). Under _National Railroad Passenger Corp. v. Morgan_, a series of events that constitute a hostile environment claim are considered one unlawful action. _See_ _West v. Norton_, 376 F. Supp. 2d 1105, 1129 (D.N.M. 2004)(Browning, J.). "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." _Nat'l R.R. Passenger Corp. v. Morgan_, 536 U.S. at 115 (internal citations and quotations omitted). An "unlawful employment practice" that constitutes a hostile work environment thus cannot be said to occur on any particular day, but rather occurs over a series of days or years. _Nat'l R.R. Passenger Corp. v. Morgan_, 536 U.S. at 115 (citing _Harris v. Forklift Systems, Inc._, 510 U.S. 17, 21, (1993)). Accordingly, so long as one of the incidents included within the claim of hostile environment occurred within the prescribed time limit, other conduct that occurred outside of the proscribed time period, but contributing to the hostile work environment, is not time barred. _See_ _Nat'l R.R. Passenger Corp. v. Morgan_, 536 U.S. at 105 (holding "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period"); _West v. Norton_, 376 F. Supp. 2d at 11. In _National Railroad Passenger Corp. v. Morgan_, the Supreme Court addressed whether an

EEOC charge alleging the plaintiff was "consistently harassed and disciplined more harshly than other employees on account of his race" was part of the same hostile work environment claim as "evidence from a number of other employees that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets." 536 U.S. at 105, 120. While expressly declining to make a judgment on the merits of the plaintiff's claims, the Supreme Court found it could not say that these were "not part of the same actionable hostile environment claim." 536 U.S. at 121.

In <u>Duncan v. Manager, Department of Safety, City & County of Denver</u>, the Tenth Circuit addressed a plaintiff's hostile environment claim alleging "three groups of acts that plausibly took place during the filing period: (1) the harassing statements by Sgt. Andrews; (2) the spreading of rumors by Lt. Leone; and (3) the anonymous magazine article placed in her box and the theft of a notebook by an unknown perpetrator." 397 F.3d at 1309. The Tenth Circuit "examin[ed] the acts in the filing period and determin[ed] what acts outside of the filing period [we]re related by type, frequency, and perpetrator. The entire range of related acts constitute[d] the hostile work environment underlying Ms. Duncan's claim." 397 F.3d at 1309. The Tenth Circuit found:

> The alleged actions of Sgt. Andrews and Lt. Leone began after Ms. Duncan returned to District Four in late 1996 and continued into the filing period. These acts are related by type, frequency, and perpetrator, thus all these acts, including those before the beginning of the filing period, are within the scope of Ms. Duncan's hostile work environment claim. The alleged hostile actions that occurred before Ms. Duncan returned to District Four, however, are not part of the same hostile work environment as those alleged during the filing period. The acts she alleges immediately prior to her return are an anonymous letter threatening physical violence and Chief Michaud's adjustment of her score on the sergeant's exam. While these acts may have a temporal relation to the behavior of Sgt. Andrews and Lt. Leone, they are of a different character, they took place while Ms. Duncan was on a different assignment, and they were not perpetrated by the

same people. Even if we draw all inferences in Ms. Duncan's favor, we do not think a rational jury could conclude that any of the allegations before her return to District Four are part of the same hostile work environment as those acts alleged during the filing period.

Duncan v. Manager, Dep't of Safety, City & Cty. of Denver, 397 F.3d at 1309.

### 3. Time Requirements for Exhausting Administrative Remedies Are Not Jurisdictional.

While failure to exhaust administrative remedies is a jurisdictional bar to suit, in Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982), the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." 455 U.S. at 393. See DeWalt v. Meredith Corp., 288 F.App'x 484, 490 (10th Cir. 2008)(unpublished)(citing Zipes v. Trans World Airlines, Inc., 455 U.S. at 393; Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1174-75 (10th Cir. 1998)). The Tenth Circuit treats a plaintiff's failure to timely exhaust administrative remedies not "as a jurisdictional issue, [but] rather. . . as an affirmative defense to be raised by [defendants]." DeWalt v. Meredith Corp., 288 F. App'x at 490.

Though not jurisdictional, the time limit is not an arbitrary barrier. It is designed to give an agency timely notice of potentially illegal conduct, to discover and correct its own errors, and possibly to conciliate the claim. See Sampson v. Civiletti, 632 F.2d at 863. An employee who fails to comply with the limitation period is barred from seeking judicial relief in federal court, absent a defense of equitable tolling. See Davis v. United States Postal Serv., 142 F.3d at 1339; Wilson v. West, 962 F. Supp. 939, 944 (S.D. Miss. 1997)(Bramlette, J.).

### a. Exceptions of Equitable Tolling Are Narrowly Construed.

"Equitable exceptions, however, have been narrowly construed." Harms v. I.R.S., 321 F.3d 1001, 1006 (10th Cir. 2003). See Montoya v. Chao, 296 F.3d 952, 957 (10th Cir. 2002)(stating that "federal courts have typically extended equitable relief only sparingly"). The Tenth Circuit "has generally recognized equitable tolling of Title VII periods of limitation only if circumstances rise to the level of active deception which might invoke the powers of equity to toll the limitations period." Montoya v. Chao, 296 F.3d at 957. See Godwin v. Sw. Research Inst., 237 F. App'x 306, 307 (10th Cir. 2007)(unpublished)("Our precedent requires that an ADEA plaintiff demonstrate 'active deception' on the part of an employer, the EEOC, or the court."); Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1269 n.2 (10th Cir. 1996)(noting in a Title VII case that "extraordinary circumstances" are "necessary to justify equitable tolling under established Tenth Circuit precedent."). "Equitable tolling may be appropriate where a plaintiff has been lulled into inaction by an employer's 'deliberate design ... or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" Al-Ali v. Salt Lake Cmty. Coll., 269 F. App'x 842, 847 (10th Cir. 2008)(unpublished)(quoting Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)). Equitable tolling "is not warranted where an employee is aware of all of the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose." Bennett v. Coors Brewing Co., 189 F.3d 1221, 1235 (10th Cir. 1999)(citation omitted).

### b.     Equitable Tolling Is Within the District Court's Discretion.

The decision whether to equitably toll the limitations period rests within the district court's sound discretion. See Purrington v. Univ. of Utah, 996 F.2d 1025, 1030 (10th Cir. 1993).

In Castaldo v. Denver Public Schools, 276 F. App'x 839 (10th Cir. 2008), the Tenth Circuit found that the district court did not abuse its discretion when it chose not to apply equitable tolling to the plaintiff's EEOC charge when the plaintiff alleged: (i) that his employer did not post notices regarding the filing of EEOC charges; (ii) that he was too incapacitated by his shoulder injuries to file an EEOC charge; and (iii) that he was proceeding pro se.  See 276 F. App'x at 841.  The Tenth Circuit found no error in the district court's conclusion that the failure to post EEOC notices was not a sufficient justification for equitable tolling.  See 276 F. App'x at 841.  See also Wilkerson v. Siegfried Ins. Agency, Inc., 683 F.2d 344, 347 (10th Cir. 1982)(holding that "the simple failure to post ... notices, without intent to actively mislead the plaintiff respecting the cause of action, does not extend the time within which a claimant must file his or her discrimination charge").  The district court noted that the plaintiff did not allege that his employer intended to actively deceive him by failing to post notices about filing EEOC charges.  See Castaldo v. Denver Pub. Schs., 276 F. App'x at 841.  The Tenth Circuit also concluded that the statements in the plaintiff's EEOC charge revealed that it was not his alleged incapacity that prevented him from filing a timely charge, but rather the fact that he was unaware of his obligation to do so until he consulted an attorney.  See 276 F. App'x at 841.  The Tenth Circuit found that "his ignorance of the filing requirement does not entitle him to equitable tolling." 276 F. App'x at 842.  Finally, the Tenth Circuit upheld the district court's finding that the plaintiff's pro-se status did not justify equitable tolling, because the plaintiff had the ability to contact an attorney but elected not to do so until well after the expiration of the filing period. See 276 F. App'x at 842.

In Godwin v. Southwest Research Institute, the Tenth Circuit held that the district court did not abuse its discretion in refusing to employ equitable tolling when the plaintiff misaddressed his EEOC submission, which arrived forty-four days after the time limit had expired. See 237 F. App'x at 307-08. In Baker v. Perfection Hy-Test, 1996 WL 1162, 74 F.3d 1248 (10th Cir. Jan. 2, 1996)(unpublished table opinion), the Tenth Circuit held that there was no active deception sufficient to toll the 300–day deadline where the plant manager of the plaintiff's employer told the plaintiff, after his demotion, that "restructuring was happening 'all over the country,' that plaintiff 'couldn't sue,' [and] that he might try but he 'wouldn't get to first base.'" 1996 WL 1162, at *2. The Tenth Circuit found that the statements "at most expressed an opinion concerning plaintiff's likelihood of success." 1996 WL 1162, at *7.

## LAW REGARDING TITLE VII EMPLOYMENT DISCRIMINATION CASES

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin." Brown v. Gen. Servs. Admin., 425 U.S. 820, 825 (1976)(citing 42 U.S.C. §§ 2000e-2, 2000e-3). "Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Farley v. Leavitt, 2007 WL 6364329, at *6 (quoting 42 U.S.C. § 2000e-2(a)(1))(internal quotes and alterations omitted). With the 1972 amendments to the statute, Title VII's protections apply to federal employees as well as to employees of private concerns. See Brown v. Gen. Servs. Admin., 425 U.S. at 825-26 (citing 42 U.S.C. § 2000e(b)).

[A]lthough the plaintiff need not plead facts that constitute a prima facie case under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, in

> order to survive a motion to dismiss, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510–15 (2002), a civil rights plaintiff retains the burden of alleging facts sufficient to state a claim entitling her to relief.

 v. Unisys Corp., 356 F. App'x 638, 640 (D.C. Cir. 2009)(unpublished)(citing <u>Jordan v. Alternative Res. Corp.</u>, 458 F.3d 332, 346-47 (4th Cir. 2006). <u>See</u> <u>Prince-Garrison v. Maryland Dep't of Health and Mental Hygiene</u>, 317 F. App'x. 351, 353 (4th Cir. 2009)(unpublished)("A civil rights plaintiff need not plead facts that constitute a prima facie case under the framework of <u>McDonnell Douglas Corp. v. Green</u> . . . in order to survive a motion to dismiss. Nevertheless, the plaintiff retains the burden to allege facts sufficient to state all the elements of her claim." (citations omitted)). <u>See also</u> <u>Messina v. Kroblin Transp. Sys., Inc.</u>, 903 F.2d 1306, 1308 (10th Cir. 1990)("<u>McDonnell Douglas</u> inferences provide assistance to a judge as he addresses motions to dismiss, for summary judgment, and for directed verdict").

## 1. Law on Claims for Hostile Work Environment.

"To establish a prima facie case of hostile work environment harassment, a plaintiff must show that 'under the totality of circumstances [(i)] the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and [(ii)] the harassment was racial or stemmed from racial animus.'" <u>Bloomer v. United Parcel Serv., Inc.</u>, 94 F. App'x 820, 825 (10th Cir. 2004)(quoting <u>Witt v. Roadway Express</u>, 136 F.3d 1424, 1432 (10th Cir. 1998)). <u>See</u> <u>Carter v. Mineta</u>, 125 F. App'x 231, 238 (10th Cir. 2005); <u>Mitchell v. City & Cty. of Denver</u>, 112 F. App'x 662, 671 (10th Cir. 2004). To establish a hostile-work environment claim, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Davis v.</u>

U.S. Postal Serv., 142 F.3d at 1341 (internal citations and quotations omitted). "A discriminatory and abusive environment must affect the employee's work environment so substantially as to make it intolerable for her to continue." Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 170 (10th Cir. 1996)(holding that a work environment did not contain "pervasive" harassment when the plaintiff made general allegations of frequent "sexual slurs" and the only specific incident cited to involved a co-worker grabbing the plaintiff).

"The mere utterance of a statement which 'engenders offensive feelings in an employee' would not affect the conditions of employment to a sufficient[ly] significant degree to violate Title VII.'" Gross v. Burggraf Construction Co., 53 F.3d 1531, 1537 (10th Cir. 1995)(quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)(alteration in the original)). A plaintiff must allege more than " 'a few isolated incidents of racial enmity' or 'sporadic racial slurs.'" Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005)(quoting Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994)(internal citation omitted)). "Instead, 'there must be a steady barrage of opprobrious racial comments.'" Chavez v. Mexico, 397 F.3d at 832 (quoting Bolden v. PRC, Inc., 43 F.3d at 551).

The Tenth Circuit has stated that "[p]ervasiveness and severity are independent and equal grounds" upon which a plaintiff may establish this element of a hostile environment claim. Witt v. Roadway Express, 136 F.3d at 1432 (addressing a hostile environment claim under 42 U.S.C. § 1981). See also Aramburu v. Boeing Co., 112 F.3d 1398, 1410 (10th Cir. 1997) (citing Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994), for the proposition that "standards and burdens under § 1981 are the same as those under Title VII"). Moreover, the plaintiff must demonstrate that the work environment was objectively and subjectively offensive,

but need "not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment." Walker v. United Parcel Service of Am., 76 F. App'x 881, 885 (10th Cir. 2003). In addition to all the circumstances, relevant considerations to determine if an environment is objectively hostile include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)(quoting Harris v. Forklift Systems, Inc., 510 U.S. at 21)(internal citations and quotations omitted).

**2. *Disparate-Treatment Race Discrimination.***

In Martinez v. United States Department of Energy, 170 F. App'x 517 (10th Cir. 2006), the Tenth Circuit explained: "To prevail on a disparate treatment claim under Title VII of the Civil Rights Act, the employee must show the employer intentionally discriminated against him for a reason prohibited by the statute." 170 F. App'x at 521 (internal citations and quotations omitted). To establish a prima-facie case of discrimination, a plaintiff must demonstrate that: (i) she is a member of a protected class; (ii) she suffered an adverse-employment action, and (iii) similarly situated employees were treated differently. See Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005); Velasquez v. Frontier Med. Inc., 375 F. Supp. 2d 1253, 1271 (D.N.M. 2005)(Browning, J.).

**3. Title VII Retaliation.**

To establish a prima-facie case of retaliation, a plaintiff must show: "([i]) that he [or she] engaged in protected opposition to discrimination, ([ii]) that a reasonable employee would have found the challenged action materially adverse, and ([iii]) that a causal connection existed

between the protected activity and the materially adverse action." Proctor v. United Parcel Serv., 502 F.3d at 1208 (quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202).

### 4. Materially Adverse Employment Action.

The Tenth Circuit liberally defines what constitutes an adverse employment action. See Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir. 1998). As the Tenth Circuit has stated:

> Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach; examining the unique factors relevant to the situation at hand. Nevertheless, we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action.

Sanchez v. Denver Pub. Schs., 164 F.3d at 532 (internal quotation marks and citations omitted). See Proctor v. United Parcel Serv., 502 F.3d at 1208. An adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010)(quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68)(internal quotation marks omitted). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68 ("We speak of material adversity because we believe it is important to separate significant from trivial harms."). "We construe the phrase 'adverse employment action' liberally and do not limit it to 'monetary losses in the form of wages or benefits.'"

Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 (quoting Annett v. Univ. of Kan., 371 F.3d at 1239). Acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions, although "a mere inconvenience or an alteration of job responsibilities will not suffice." Annett v. Univ. of Kan., 371 F.3d at 1239 (internal quotation marks and citation omitted).

In Anderson v. Clovis Municipal Schools, 265 F. App'x 699 (10th Cir. 2008), the Tenth Circuit, in an unpublished opinion, addressed the requirement of an adverse employment action in the context of a disparate-treatment claim where an employee, who had been placed on a growth plan, alleged other harsh treatment and a written reprimand in support of his claim that he suffered a hostile work environment. Relying on Schuler v. City of Boulder, 189 F.3d 1304 (10th Cir. 1999), Anderson argued that the growth plan and formal reprimand rose to the level of an adverse employment action under the law of the Tenth Circuit. In discussing Anderson v. Clovis Municipal Schools' reliance on Schuler v. City of Boulder, the Tenth Circuit stated: "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit." MacKenzie v. City and Cty. of Denver, 414 F.3d 1266, 1279 (10th Cir. 2005). See Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2000)(explaining that Title VII only prescribes discriminatory conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affects his [or her] status as an employee")(quotations omitted). "Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing a significant change in benefits will rise to the level of an adverse employment action." Robinson v. Cavalry Portfolio Serv., LLC, 365 F. App'x 104, 114 (10th Cir. 2010)(unpublished)(quoting Haynes v. Level 3 Commc'ns, 456 F.3d at 1218-19); Gerald v. Locksley, 785 F. Supp. 2d at 1088-1101

The Tenth Circuit recently clarified that a failure to exhaust administrative remedies in an EEOC charge case is no longer a jurisdictional bar. See Lincoln, 900 F.3d at 1181. The Tenth Circuit still permits defendants to raise failure to exhaust administrative remedies as an affirmative defense. See Lincoln, 900 F.3d at 1181. The Court "liberally construes discrimination charges filed with the Equal Employment Opportunity Commission" when it determines whether administrative remedies have been exhausted as to a particular claim. Jones v. United Parcel Serv., Inc., 502 F.3d at 1186; Gerald v. Locksley, 785 F. Supp. 2d 1074, 1091 (D.N.M. 2011). Although the plaintiff's failure to check a box on the form creates a presumption that the plaintiff is not asserting the claims that the box represents, the plaintiff can overcome this presumption if the charge's text "clearly sets for that claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186. "Under Title VII, each discrete incident of discriminatory or retaliatory treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." Lincoln, 900 F.3d at 1181. This exhaustion requirement is applicable to incidents of discrimination that occur after the employee has filed his or her initial EEOC charge. See Lincoln, 900 F.3d at 1181. The plaintiff may not rely on a "'continuing violation'" theory or assert that a charge not filed with the EEOC is permissible because it " 'reasonably relate[s]'" to the charge filed with the EEOC. Cirocco v. McMahon, 768 F. App'x 854, 861 (10th Cir.

2019)(quoting <u>Eisenhour v. Weber Cty.</u>, 744 F.3d 1220, 1227 (10th Cir. 2014))(alteration in

<u>Cirocco v. McMahon</u>).  To satisfy the exhaustion requirement as to discrete incidents occurring

after the additional charge, the employee must file an additional or amended charge with the

EEOC.  <u>See</u> <u>Lincoln</u>, 900 F.3d at 1181.

The plaintiff generally must file a charge against an individual before the plaintiff files

suit against that individual.  <u>See</u> <u>Knowlton v. Teltrust Phones, Inc.</u>, 189 F.3d 1177, 1185 (10th

Cir. 1999)(citing 42 U.S.C. § 2000e-5(f)(1)(stating that a "civil action may be brought against

the respondent named in the [EEOC] charge . . . by the person claiming to be aggrieved").  The

Tenth Circuit permits, however, an "identity-of-interest" exception "when there is a clear identity

of interest between the unnamed defendant and the party named in the administrative charge."

<u>Knowlton v. Teltrust Phones, Inc.</u>, 189 F. 3d at 1185 (internal quotation marks and citations

omitted).  "This identity-of-interest exception satisfies a Title VII purpose that the defendant

have notice of the charge and the EEOC have an opportunity to attempt conciliation."  <u>Knowlton</u>

<u>v. Teltrust Phones, Inc.</u>, 189 F.3d at 1185 (citing <u>Romero v. Union Pac. R.R.</u>, 615 F.2d 1303,

1311 (10th Cir. 1980)).  Courts use a four-factor test to determine whether the identity-of-interest

exception applies:

> (1) whether the role of the unnamed party could have been ascertained at the time
> of the filing of the EEOC complaint through reasonable effort by the complainant;
> (2) whether the interests of a named party are so similar to the unnamed party's
> that it would be unnecessary to include the unnamed party in the EEOC
> proceedings for the purpose of obtaining voluntary conciliation and compliance;
> (3) whether the unnamed party's absence from the EEOC proceedings resulted in
> actual prejudice; and (4) whether the unnamed party has in some way represented
> to the complainant that its relationship with the complainant is to be through the
> named party.

<u>Knowlton v. Teltrust Phones, Inc.</u>, 189 F.3d at 1185 n.9 (internal citations omitted).

## **LAW REGARDING WAIVER OF IMMUNITY UNDER THE NMTCA**

The New Mexico Legislature enacted the NMTCA because it recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity." N.M. Stat. Ann. § 41-4-2A. The New Mexico Legislature also recognized, however,

> that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done.

N.M. Stat. Ann. § 41-4-2A. As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act." N.M. Stat. Ann. § 41-4-2A. The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." N.M. Stat. Ann. § 41-4-2B. The NMTCA is the

> exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

N.M. Stat. Ann. § 41-4-17A. A plaintiff may not sue a New Mexico governmental entity, or its employees or agents, unless the plaintiff's cause of action fits within one of the exceptions that the Legislature created for governmental entities and public employees in the NMTCA. <u>See</u>

N.M. Stat. Ann. § 41-4-4 (granting immunity from tort liability to all "governmental entit[ies] and ... public employee[s] while acting within the scope of [their] dut[ies]"); Begay v. State, 1985-NMCA-117, 723 P.2d 252, 255 (1985)("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."), rev'd on other grounds, Smialek v. Begay, 1986-NMSC-049, 721 P.2d 1306 (N.M. Sup. Ct. 1986). A plaintiff also may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the Constitution of the State of New Mexico unless the NMTCA contains a waiver of immunity. See Chavez-Rodriguez v. City of Santa Fe, No. CIV 07-0633, 2008 WL 5992269, at *6-7 (D.N.M. Oct. 17, 2008)(Browning, J.); Barreras v. N.M. Corr. Dep't, 2003-NMCA-027, ¶ 24, 62 P.3d 770, 776 ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act."); Chavez v. City of Albuquerque, 1998-NMCA-004, 952 P.2d 474, 477 (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution against a city, or its employees or agents, unless the NMTCA waives immunity); Rubio v. Carlsbad Mun. Sch. Dist., 1987-NMCA-127, 744 P.2d 919, 922 (holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board); Begay v. State, 1985-NMCA-117, 723 P.2d at 257 (finding that no waiver exists in NMTCA for suit under Article II, § 11 of the New Mexico Constitution). Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint against the governmental entity or its employees must be dismissed. See Begay v. State, 1985-NMCA-127, 723 P.2d at 255; Williams v. Bd. of Regents of Univ. of N. M., 20 F. Supp. 3d 1177, 1186-87

(D.N.M. 2014)(Browning, J.); <u>Gallegos v. Bernalillo Cty. Bd. of Comm'rs</u>, No. CIV 16-0127, 2017 WL 3575883, at \*24 (D.N.M. Aug. 17, 2017)(Browning, J.)

### <u>LAW REGARDING WAIVER OF IMMUNITY UNDER CONTRACT</u>

New Mexico governmental entities and public employees are immune "from actions based on contract, except based on a valid written contract." N.M. Stat. Ann. § 37-1-23(A). This exception permits New Mexico "to control its amenability to suits by the terms of its written agreements." <u>City of Raton v. Ark. River Power Auth.</u>, 611 F. Supp. 2d 1190, 1216 (D.N.M. 2008)(Browning, J.) Ordinarily, for there to be a legally enforceable contract, an offer, an acceptance, consideration, and mutual assent must factually support an agreement. See <u>Garcia v. Middle Rio Grande Conservancy Dist.</u>, 121 1996-NMSC-029, 918 P.2d 7, 10 (1996). In the employment context, those elements are satisfied when an employer offers a prospective employee a position, that prospective employee accepts and proceeds to carry out the tasks required in service of the employer, and the employer compensates the employee for doing so. See <u>id</u>. <u>Ortega v. Flores</u>, No. CR 05-01236, 2006 WL 4061180, at \*4 (D.N.M. Sept. 30, 2006)(Browning, J.). Under New Mexico law, "an employment contract may be implied in fact from a term exhibited in writing in, for example, a personnel policy manual." <u>Garcia v. Middle Rio Grande Conservancy Dist.</u>, 1996-NMSC-029, 918 P.2d at 11; <u>Martinez v. Romero</u>, No. CIV 11-785, 2012 WL 13076174, at \*3 (D.N.M. May 4, 2012)(Browning, J.). A written personnel manual gives rise to an implied contract if it controls the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlines. See <u>Cockrell v. Bd. of Regents of N.M. State Univ.</u>, 2002-NMSC-009, 45 P.3d 876, 887. In addition, N.M. Stat. Ann. § 37-1-23(a) incorporates implied employment contracts that include

written terms set forth in personnel manuals. See <u>Garcia v. Middle Rio Grande Conservancy Dist.</u>, 1996-NMSC-029, 918 P.2d at 11 (holding that the personnel policy, which contained provisions relating to most aspects of the employment relationship, including job description, compensation, leave, termination, and administrative appeals, amounted to an implied contract and a valid written contract under N.M. Stat. Ann. § 37-1-23(A)); <u>Ortega v. Flores</u>, 2006 WL 4061180, at *4.

### RELEVANT NEW MEXICO LAW REGARDING IMPLIED EMPLOYMENT CONTRACTS

In New Mexico, "an employment contract is for an indefinite period and is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise." <u>Hartbarger v. Frank Paxton Co.</u>, 1993-NMSC-029, ¶ 4, 857 P.2d 776, 779 (1993)(citation omitted). At-will employment relationships "can be terminated by either party at any time for any reason or no reason, without liability." <u>Hartbarger v. Frank Paxton Co.</u>, 115 N.M. at 668, 857 P.2d at 779. "New Mexico courts have recognized two additional exceptions to the general rule of at-will employment: wrongful discharge in violation of public policy (retaliatory discharge), and an implied contract term that restricts the employer's power to discharge." <u>Hartbarger v. Frank Paxton Co.</u>, 115 N.M. at 668, 857 P.2d at 779.

A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct. See <u>Newberry v. Allied Stores, Inc.</u>, 108 N.M. 424, 426, 773 P.2d 1231, 1233 (1989)(citation omitted). "Under New Mexico law, a personnel manual gives rise to an implied contract if it controlled the employer-employee

relationship and an employee could reasonably expect his employer to conform to the procedures it outlined."  See Newberry v. Allied Stores, Inc., 108 N.M. at 427, 773 P.2d at 1234.  The question whether an employment relationship has been modified is a question of fact.  See Lukoski v. Sandia Indian Mgmt. Co., 106 N.M. 664, 666, 748 P.2d 507, 509 (1988).  "An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon."  Hartbarger v. Frank Paxton Co., 115 N.M. at 672, 857 P.2d at 783. If the alleged employer's promise is not sufficiently explicit, the courts will not find an implied contract.  See Hartbarger v. Frank Paxton Co., 115 N.M. at 669, 857 P.2d at 780.

> Evidence relevant to this factual decision includes the language used in the personnel manual as well as the employer's course of conduct and oral representations regarding it. We do not mean to imply that all personnel manual[s] will become part of employment contracts. Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason. Such actions instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual. However, if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it. Having announced a policy, the employer may not treat it as illusory.

Lukoski v. Sandia Indian Mgmt. Co., 106 N.M. at 666-67, 748 P.2d at 509-10 (citation omitted).

"Whether an employer's words and conduct support a reasonable expectation on the part of employees that they will be dismissed only in accordance with specified procedures or for specified reasons generally is a question of fact for the jury."  Mealand v. E. N.M. Med. Ctr., 131 N.M. 65, 69, 33 P.3d 285, 289 (2001).  "[B]ecause an employee's expectation based on an employer's words or conduct must meet a certain threshold of objectivity, an employer may be

entitled to judgment as a matter of law if the employee's expectations are not objectively reasonable." West v. Wash. Tru Solutions, LLC, 2010-NMCA-001, ¶ 7, 224 P.3d 651, 653. In deciding whether to grant summary judgment, the question is whether a reasonable jury could find that the words and conduct support an objectively reasonable expectation that the employees would be dismissed only in accordance with specified procedures and for specified reasons. See Mealand v. E. N.M. Med. Ctr., 131 N.M. at 69, 33 P.3d at 289. "[E]ven where a personnel manual purports to disclaim any intentions of forming contractual obligations enforceable against an employer, a fact finder may still look to the totality of the parties' statements and actions, including the contents of a personnel manual, to determine whether contractual obligations were created." Beggs v. City of Portales, 146 N.M. 372, 377, 210 P.3d 798, 803 (2009).

In Gerald v. Locksley, 785 F. Supp. 2d 1074 (D.N.M. 2011)(Browning, J.), the Court reviewed whether the plaintiff, an assistant football coach for the University of New Mexico, had a contract that the University's Athletics Policies and Procedures covered. See 785 F. Supp. 2d at 1140. His contract with UNM stated that his "appointment is governed by applicable policies as stated in the University's Intercollegiate Policies and Procedures Manual." 785 F. Supp. 2d at 1140. The Court concluded that the University's policies and procedures, in comparison to those in Ruegsegger v. Western New Mexico University Board of Regents, were "similarly broad, suggestive, and 'of a non-promissory nature and merely a declaration of defendant's general approach.'" 735 F. Supp. 2d at 1143 (quoting Ruegsegger v. Bd. of Regents of W.N.M. Univ., 154 P.3d at 688).

**ANALYSIS**

The Court grants the Defendants' Motion for partial dismissal. The Court concludes that Hyman has not exhausted his administrative remedies as to Counts I, III, and V, and, therefore, dismisses those claims. The Court also concludes that the Defendants have immunity from a breach-of-contract action and that this action does not fall within one of the waiver-of-immunity exceptions.

## I. THE COURT WILL DISMISS COUNTS I, III, AND V, BECAUSE HYMAN HAS NOT EXHAUSTED THE ADMINISTRATIVE REMEDIES.

The Court grants the Defendants' Motion for Partial Dismissal of Counts I, III, V, because of their failure-to-exhaust affirmative defense. The Tenth Circuit permits a defendant to "raise an affirmative defense of failure to exhaust." Lincoln, 900 F.3d at 1181. The district court can dismiss "a claim on the pleadings based on an affirmative defense" "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." Fernandez v. Clean House, LLC, 883 F.3d 1296, 1299 (10th Cir. 2018). When considering a motion to dismiss, the Court can consider outside materials without converting a 12(b)(6) motion to dismiss to a motion for summary judgment if the outside materials are referenced in the complaint and their authenticity is unchallenged. See Smelser v. Sandia Corp., Civ. No. 17-388 SCY/KK, 2018 WL 1627214, at *4 (D.N.M. March 30, 2018)(Yarbrough, M.J.)(citing Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1253 (10th Cir. 2005)). The Court, therefore, considers Hyman's Charge when determining whether he failed to exhaust the administrative remedies.

The Court "liberally construes discrimination charges filed with the Equal Employment Opportunity Commission" when it determines whether administrative remedies have been exhausted as to a particular claim. Jones v. United Parcel Serv., Inc., 502 F.3d at 1186. See

Gerald v. Locksley, 785 F. Supp. 2d at 1091. Hyman's failure to check a box on the form creates a presumption that Hyman is not asserting the claims that the box represents. See Jones v. United Parcel Serv., Inc., 502 F.3d at 1186. Despite alleging gender and disability discrimination in his Complaint, Hyman did not check the boxes marked "sex," "disability," or "other" on the EEOC charge. Charge at 1. Hyman, therefore, must overcome this presumption that his Charge does not assert his gender or disability claims.

Hyman can overcome this presumption if his Charge's text "clearly sets for that claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186. "Under Title VII, each discrete incident of discriminatory or retaliatory treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." Lincoln, 900 F.3d at 1181. Hyman alleges multiple, discrete acts in each of his Counts: (i) gender discrimination in his first Count; (ii) an ADA violation in his third Count; and (iii) disability discrimination in his fifth Count.[7] See Complaint at 4, 7, 11.

First, Hyman brings Count I, discrimination based on gender, against NMSU and Oretskin. See Complaint at 4. Hyman states that he and his doctoral student were not permitted to hold Hyman's office hours online during his "intermittent FMLA leave" in Spring 2017 while "a female doctoral student was allowed to hold virtual office hours from Europe while teaching online in Summer 2017." See Complaint ¶ 14 b., at 4-5. Hyman also alleges that Oretskin did not consult Hyman about his doctoral students' work even though "she consulted with female faculty members about their PhD student's teaching and research assignments." Complaint ¶ 14

---

[7]This exhaustion requirement is applicable to the incidents of discrimination that occur after Hyman has filed his Charge. See Lincoln, 900 F.3d at 1181.

f., at 5.  Second, Hyman brings Count III, violations of his rights under the ADA, against NMSU

and Hoffman.  See Complaint ¶ 22 a., at 7.  NMSU's Office of Institutional Equity issued

Hyman an EEO accommodation in the fall of 2012.  See Complaint ¶ 22 a., at 8.  Hyman "never

invoked the accommodation because it would have eliminated his ability to work with" doctoral

students in the Marketing Program.[8]  Complaint ¶ 22 a., at 8.  Previous department

administrators "informally accommodated [Hyman] by minimizing his synchronous

assignments."  Complaint ¶ 22 a., at 8.  Hyman stated that Hoffman, in contrast, "repeatedly

attempted to increase Hyman's synchronous assignments" by assigning Hyman to two

committees and changing a course Hyman was teaching from an online course to an in-person

course.  See Complaint ¶ 22 a., at 8-9.  Hyman "is the only member of his department whose

teaching assignment for Spring 2019 was modified in this way."  Complaint ¶ 22 a., at  8.  Third,

Hyman brings Count IV, discrimination based on disability, against NMSU, Hoffman, and

Oretskin.  See Complaint ¶ 22 a., at 11.  He states that Hoffman and Oretskin removed him as

Ph.D. Coordinator "in a retaliatory effort" "after [Hyman made] it obvious [that he] would resist

efforts to unilaterally violated PhD Program policies to PhD students' detriment."  Complaint ¶

30b., at 11.

The Court compares these claims to the Charge's text.   The Charge discusses a single

incident in which Hyman was accused of violating a student's ADA rights.  See Charge at 1.

Hyman complained to the Head of Legal Counsel when the investigation length exceeded the

number of days that NMSU policy permits.  See Charge at 1. When Hyman asked for an appeal

upon learning that the investigation's findings would remain permanently in his personnel file,

---

[8]Hyman does not explain how invoking his accommodation would have eliminated his
ability to work with Marketing Program doctoral students.  See Complaint at 8.

Millot denied the appeal and said that NMSU does not permit appeals for these situations.  See Charge at 1.  Hyman accuses Millot of retaliating against him by denying him an appeal.  See Charge at 1.  He identifies this situation as age discrimination, because he believes that NMSU is trying to push out the older professors who earn higher salaries.  See Charge at 1.  The Court concludes that the factual situation presented in the Charge is different from the factual situations in the Complaint's gender and disability discrimination claims.  The Court, therefore, concludes that Hyman has not rebutted the presumption.

### A.   THE COURT WILL NOT APPLY A FUTILITY EXCEPTION TO THE EXHAUSTION-OF-ADMINISTRATIVE-REMEDIES REQUIREMENT.

The Court recognizes that courts can apply a futility exception in some contexts.  Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 629 (10th Cir. 2012)(stating that the Court can apply a futility exception in failure-to-hire and failure-to-promote employment discrimination claims "where the employer has a 'consistently enforced discrimination policy' that will deter applicants who are aware of the policy from applying because they know they face 'certain rejection'")(quoting Int'l Brotherhood. of Teamsters v. United States, 431 U.S. 324, 365 (1977)); McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 874 (10th Cir. 2007)(discussing the futility exception in the Individuals with  Disabilities Education Act, 28 U.S.C. § 1400, context); N.M. Assoc. for Retarded Citizens v. New Mexico, 678 F.2d 847, 850 (10th Cir. 1982)(discussing the futility exception in the Rehabilitation Act, 29 U.S.C. § 701, context); and Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303-04 (9th Cir. 1992)(discussing the futility exception in the Individuals with Disabilities Education Act, 28 U.S.C. § 1400, context).

Because of the important role that the exhaustion requirement plays in ensuring that "the agency is on notice of the precise nature of the claims against it and [] promoting voluntary

compliant with the civil-rights laws," the Court has been reluctant in the past to extend the futility exception in the Title VII context beyond the failure-to-hire and failure-to-promote circumstances. See Woodward v. Salazar, 731 F. Supp. 2d 1178, 1193 (D.N.M. 2010)(Browning, J.). In Woodward v. Salazar, the Court did not apply the futility exception to a Title VII claim because the plaintiff did not "satisfactorily explain why exhaustion would be futile" and did not offer any analogous caselaw in which a court applied the futility exception in similar circumstances. Woodward v. Salazar, 731 F. Supp. 2d at 1193. In this case, Hyman offers no explanation why exhausting his administrative remedies would be futile, nor does he offer any analogous caselaw in which a court applied the futility exception in similar circumstances. Hyman, thus, has not persuaded the Court to deviate from its past position. Moreover, the Court concludes that requiring exhaustion in this case "will serve the purposes of the exhaustion requirement by making sure" that NMSU and its individual employees are "on notice of the precise nature of the claims against it and by promoting voluntary compliance with the civil-rights laws." Woodward v. Salazar, 731 F. Supp. 2d at 1193. The Court, therefore, does not apply the futility exception to Hyman's Title VII claims.

The Court can apply the "futile gesture" exception in the ADA context "only in the rare case where an employer has essentially foreclosed the interactive process through its policies or explicit actions." Davoll v. Webb, 194 F.3d at 1133. The Tenth Circuit previously has found that the futile-gesture exception applies when the employer had a written policy against the accommodation and the superior had denied the request. See Davoll v. Webb, 194 F.3d at 1133. Although Millot denied Hyman's request to hold online office hours, Hyman points to no NMSU written policy against an accommodation of minimizing synchronous assignments. See

Complaint ¶ 14 b., at 5-6. In fact, Hyman says that past administrators informally accommodated him by minimizing his synchronous assignments, which points to the absence of a written policy against this accommodation. See Complaint ¶ 22 a., at 7-8. Moreover, during his Complaint's discussion of the ADA violation, Hyman acknowledges that he has "never invoked" the EEO accommodation that NMSU's Office of Institutional Equity provided him in the fall of 2012. Complaint at 8. Hyman does not support his contention that invoking the EEO accommodation would prevent him from working with doctorate students. See Complaint ¶ 22 a., at 8. The Court concludes that Hyman has a route in which to seek accommodations and that, therefore, the futile-gesture exception is inapplicable. See McFarland v. City & Cty. of Denver, No. CIV 15-01258, 2017 WL 3872639, at *9 (D. Colo. Sept. 5, 2017)(Tafoya, M.J.), aff'd, 744 F. App'x 583 (10th Cir. 2018)(stating that "the Tenth Circuit has 'emphasize[d] that an employee's subjective belief about the futility of initiating the interactive process will not, by itself, relieve him or her of that obligation'")(quoting Davoll v. Webb, 194 F.3d at 1133)(internal citation omitted)(alteration in McFarland v. City & Cty. Of Denver)).

### B. THE COURT WILL NOT APPLY THE IDENTITY-OF-INTEREST EXCEPTION TO THE EXHAUSTION-OF-ADMINISTRATIVE-REMEDIES REQUIREMENT.

The Court can apply an identity-of-interest exception to the exhaustion-of-administrative-remedies requirement. See Knowlton v. Teltrust Phones, Inc., 189 F. 3d at 1185. The Defendants argue that all individual defendants should be dismissed because only NMSU was named in the Charge. See Motion at 5. First, the Court considers whether to dismiss Oretskin and Hoffman from the case. The identity-of-interest exception ensures that "the defendants have notice of the charge and the EEOC have an opportunity to attempt conciliation."

Knowlton v. Teltrust Phones, Inc., 189 F.3d at 1185 (citing Romero v. Union Pac. R.R., 615 F.2d 1303, 1311 (10th Cir. 1980)).  Because the incidents alleged in the Complaint involving Oretskin and Hoffman were absent from the Charge, Oretskin and Hoffman did not have the notice required by Title VII.  Compare Charge at 1 with Complaint at 4-9.  Although Hoffman is included in the Complaint's retaliation claim, Hyman accuses him of retaliation by slander, which is a discrete act separate from the acts alleged in the Charge.  Compare Charge at 1 with Complaint ¶ 34 c., at 13.  Hoffman could not have had notice that Hyman would file a complaint regarding his slander based on factually separate incident in the Charge.

The Court notes that, although the Tenth Circuit has adopted a four-factor identity-of-interest test, the Tenth Circuit rarely uses the test.  See, e.g., Knowlton v. Teltrust Phones, Inc., 189 F.3d at 1185 (finding the four-factor test unnecessary where the court "has upheld the jury's finding that the named and unnamed parties constitute a single-employer"); Faragalla v. Douglas Cty. Sch. Dist. RE 1, 411 F. App'x 140, 159 (10th Cir. 2011)(unpublished)(discussing only the fourth factor, which is the only factor the plaintiff addressed, before concluding that no identity of interest existed).  Regardless of the four-factor test's usefulness, the Court must apply it.  The Court considers at least the following four factors to determine whether the identity-of-interest exception applies to Howard:

> (1) whether the role of the unnamed party could have been ascertained at the time of  the filing of the EEOC complaint through reasonable effort by the complainant; (2) whether the interests of a named party are so similar to the unnamed party's that it would be unnecessary to include the unnamed party in the EEOC proceedings for the purpose of obtaining voluntary conciliation and compliance; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Knowlton v. Teltrust Phones, Inc., 189 F.3d at 1185 n.9 (internal citations omitted).

The Court considers the first factor, whether the unnamed party's role could have been ascertained at the time of the filing of the EEOC complaint through reasonable effort by the complainant. See Knowlton v. Teltrust Phones, Inc., 189 F.3d at 1185 n.9. The Court believes that Hyman could have ascertained that it was Howard who issued the findings of the investigation at the time he filed his EEOC charge. Hyman alleges in his Complaint that he communicated with Howard about the investigation during the investigation, so he must have been aware that Howard had a role in investigation. Complaint ¶ 34 b., at 12. The Court, therefore, concludes that the first factor weighs in favor of not applying the exception. The Court considers the second factor, the similarity of a named party's interests and an unnamed party's interests. Howard, as NMSU's Provost, has interests sufficiently similar to NMSU that naming him would be unnecessary. See Complaint at 1. As the head of NMSU, notice to NMSU about the lawsuit is notice to NMSU's chief officer. The Court considers the third factor, whether the absence of the party from the EEOC was prejudicial. The Court concludes that this factor is neutral, because neither party submitted information whether Howard was involved in the EEOC proceedings. The Court considers the fourth factor, which is whether Howard represented to Hyman that his relationship with Hyman was through NMSU. The Court concludes that this factor weighs in favor of applying the exception because the record does not show that Howard made that representation. From the record, the Court concludes that the identity-of-interest exception does not apply. Moreover, Hyman did not object to the Court dismissing his claims against individual defendants, nor does he argue that the Court should apply an identity-of-interest exception to the individual defendants. The Court, therefore,

dismisses all claims against Howard, Hoffman, and Oretskin without prejudice.[9]  Compare

Flores v. City of Farmington, No. CIV 18-0402 WJ-KBM, 2019 WL 498354, at *5 (D.N.M. Feb.

8, 2019)(dismissing plaintiff's Title VII claims against individual defendants for failure to

exhaust because the plaintiff "did not object to the dismissal of his Title VII claims against the

individual Defendants and did not otherwise argue that the individual Defendants should stay in

under an identity of interests theory").

## II.     NMSU AND ITS EMPLOYEES ARE IMMUNE FROM THE ALLEGED TORT AND <u>CONTRACTUAL CLAIMS.</u>

The Court dismisses Count IV, Interference with Contract, because New Mexico

government entities[10] and public employees who are acting within the scope of their duties are

immune from tort liability.  See N.M. Stat. Ann. 41-4-4.  New Mexico government entities and

public employees have waived liability in certain circumstances.  See N.M. Stat. Ann. § 41-4-5

(waiving immunity for damages arising out of the "operation or maintenance of any motor

---

[9]Defendants ask the Court to dismiss the Title VII claims against individual defendants because "Title VII claims do not sound against individuals."  Motion at 5 (citing Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996)).  The Defendants have misconstrued that case; Haynes v. Williams states that "*personal* capacity suits against individual supervisors are inappropriate under Title VII."  Haynes v. Williams, 88 F.3d at 901 (emphasis added).  Although the Tenth Circuit does not permit Title VII lawsuits against individuals in their personal capacities, it permits Title VII lawsuits against individuals in their official capacities "as a means to sue the employer under an agency theory."  Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1083 n.1 (10th Cir. 2007).  Hyman alleges claims against the individual Defendants in their official capacities, not their personal capacities.  See Complaint at 1.  The Court, therefore, does not adopt the Defendants' reasoning for dismissing the Title VII claims against Hoffman and Oretskin.

[10]NMSU is a government entity.  See N.M. Stat. Ann. § 21-8-1 ("The New Mexico college of agriculture and mechanic arts (New Mexico state university) shall be an institution of learning . . . under such terms, rules and regulations as may be prescribed by said board of regents.")(capitalization in original).

vehicle, aircraft, or watercraft"); N.M. Stat. Ann. § 41-4-6 (waiving immunity for damages arising out of "the operation or maintenance of any building, public park, machinery, equipment or furnishings"); N.M. Stat. Ann. § 41-4-7 (waiving immunity for damages arising out of "the operation of airports"); N.M. Stat. Ann. § 41-4-8 (waiving immunity for damages arising out of "the operation of the following public utilities and services: gas; electricity; water; solid or liquid waste collection or disposal; heating; and ground transportation"); N.M. Stat. Ann. § 41-4-9 (waiving immunity for damages arising out of "the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities"); N.M. Stat. Ann. § 41-4-10 (waiving immunity for damages arising out of "the negligence of public employees licensed by the state or permitted by law to provide health care services while acting within the scope of their duties of providing health care services"); N.M. Stat. Ann. § 41-4-11 (waiving immunity for damages arising out of "the negligence of public employees while acting within the scope of their duties during the construction, and in subsequent maintenance, of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area"); N.M. Stat. Ann. § 41-4-12 (waiving immunity for damages arising out of "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties").   Tortious interference with a contract is not one of those waivers to immunity. Moreover, the Court has confronted this exact situation before

New Mexico "recognizes a cause of action for tortious interference with contractual relations." El Dorado Utils., Inc. v. Eldorado Area Water and Sanitation Dist., 2005-NMCA-036, ¶ 24, 137 N.M. 217, 109 P.3d 305, 310 (citing Kelly v. St. Vincent Hosp., 1984-NMCA-130, ¶¶ 25–26, 102 N.M. 201, 692 P.2d

1350, 1356). To prevail on a claim for tortious interference, a plaintiff must demonstrate that the defendant "'improperly interfered with the plaintiffs' contractual relations, either through improper means or improper motive.'" Avalon Medical Group II, LLC v. LLP Mortgage, LTD., No. 12-CV-0833 MCA/KBM (D.N.M. 2014)(Armijo, J.)(quoting Diversey Corp. v. Chem-Source Corp., 1998-NMCA-112, ¶ 20, 125 N.M. 748, 965 P.2d 332, 339)(characterizing the tort as intentional). The MTCA does not waive liability for intentional torts, however. See El Dorado Utils., Inc. v. Eldorado Area Water and Sanitation Dist., 2005-NMCA-036, ¶ 251, 137 N.M. 217, 109 P.3d 305, 311. As a result, New Mexico officials cannot be held liable for tortious interference with contractual relations. See El Dorado Utils., Inc. v. Eldorado Area Water and Sanitation Dist., 2005-NMCA-036, ¶ 25, 137 N.M. 217, 109 P.3d 305, 311. The Plaintiffs do not dispute this immunity. See Motion to Dismiss Count V Response at 2 ("[C]oncurr[ing] with the Defendants that under these circumstances, this Court lacks jurisdiction to hear Count V[.]"). Accordingly, the Court dismisses Count V of the Complaint.

Pueblo of Pojoaque v. New Mexico, 214 F. Supp. 3d 1028, 1119 (D.N.M. 2016)(Browning, J.), aff'd, 863 F.3d 1226 (10th Cir. 2017). Accordingly, the Court dismisses Count IV.

If Hyman meant for the Court to interpret Count IV as a contract claim, the Court still concludes that immunity bars the claims. New Mexico governmental entities and public employees are immune "from actions based on contract, except based on a valid written contract." N.M. Stat. Ann. § 37-1-23(A). Hyman does not reference in his Complaint nor attach to his Complaint a document that is labeled expressly an employment contract between NMSU and Hyman. See Complaint at 1-16. New Mexico law has recognized, however, that an employment contract also can be implied in fact from a written term, such as an employment handbook. See Garcia v. Middle Rio Grande Conservancy Dist., 1996-NMSC-029, 918 P.2d 7, 11; Martinez v. Romero, 2012 WL 13076174, at *3. Hyman proffers an illustrative list of documents that he asserts comprise a written contract: the "granting of tenure, granting of promotion, and the granting of various professorships." Response at 4. Hyman does not reference in his Complaint nor attach to his Complaint any of these documents. See Complaint

at 1-16. Thus, Hyman does not provide in his pleadings a valid written complaint as N.M. Stat. Ann. § 37-1-23(A) requires.

The Tenth Circuit permits, however, the Court to consider documents outside the complaint at the motion-to-dismiss stage without converting the motion into a motion for summary judgment only if the documents are "(i) documents that the complaint incorporates by reference, (ii) 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,' and (iii) matters of which a court may take judicial notice." Gallegos v. Bernalillo Cty. Bd. of Cty. Commissioners, 278 F. Supp. 3d at 1259 (citing Tellabs, Inc. v. Makor Issues & Rights Ltd., 551 U.S. at 322, and quoting Jacobsen v. Deseret Book Co., 287 F.3d at 941).[11] Hyman attaches his employment contract, which incorporates by reference the NMSU Faculty Handbook, to his Response. See Contract of Employment at 6, filed March 22, 2019 (Doc. 16-1). He does not attach the NSMU Faculty Handbook to his Response. See Response at 1-6. Hyman attaches the grant of one professorship -- the Distinguished Achievement Professorship -- to his Response but attaches no

---

[11]The Court notes that the Supreme Court of New Mexico concluded that, when a court considered an EEOC complaint and other documents attached to a motion to dismiss, the court converted the motion to dismiss into a motion for summary judgment. See Sabella v. Manor Care, Inc., 1996-NMSC-014, ¶ 8, 915 P.2d 901, 903. In this case, the Defendants attached only Hyman's EEOC charge to their Motion to Dismiss. The Court concludes that this document does not convert the Motion to Dismiss into a motion for summary judgment. The second exception of three exceptions to this rule permits the Court to consider a document if it is "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Gallegos v. Bernalillo Cty. Bd. of Cty. Commissioners, 278 F. Supp. 3d 1245, 1259 (D.N.M. 2017)(Browning, J.). Hyman's Complaint referenced his EEOC charge, see Complaint ¶ 6, at 3, which is central to the Complaint, because it lists the charges for which the EEOC gave Hyman the right-to-sue letter on which he brought the Complaint, and no party disputes its accuracy. Hyman's EEOC charge therefore meets the second exception. Thus, the Court can and will consider the EEOC charge without converting the Motion to Dismiss to a motion for summary judgment.

other grants of tenure, promotion, or professorship beyond his initial associate professorship offer. See Distinguished Achievement Professor Letter from Wendy K. Wilkins to Michael Hyman at 32 (dated May 11, 2012), filed March 22, 2019 (Doc. 16-1); Response 1-6. Hyman does not reference his offer letter or documents granting tenure, promotion, or various professorships in his Complaint, so he does not meet the first exception, which requires him to incorporate the documents by reference in his complaint, or the second exception, which, as a threshold, requires him reference the documents. See Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs, 278 F. Supp. 3d at 1259. Moreover, these documents could have been falsified, and the Court has no undisputable source to which to turn to determine accuracy. Thus, these documents do not meet the third exception, which requires the documents to meet the criteria for the Court to take judicial notice of the documents. See Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs, 278 F. Supp. 3d at 1259. See also Leon v. Fedex Ground Package Sys., Inc., 163 F. Supp. 3d 1050, 1077 (D.N.M. 2016)(Browning, J.)(stating the Federal Rules of Evidence permit "the Court to take notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'"(quoting Fed. R. Evid. 201 (b), (f)). Thus, the Court cannot assess these documents without converting the Motion to Dismiss into a motion for summary judgment, which it declines to do. The Court does not think it is necessary to look outside the pleadings, because Hyman does not allege that any of these documents contain the written provisions that he alleges NMSU violated in his interference-with-contract claim: (i) the "Defendants have created an extremely unpleasant work environment"; (ii) the Defendants' "actions violate Plaintiff's property rights to his position as a Distinguished Achievement Professor"; (iii) the Defendants have not given Hyman "a merit-related pay

increase nor any other award . . . since Hoffman's hiring as Dean of the College of Business." Complaint ¶ 25, at 10.  See Response at 4 (stating only about the documents that the "Defendants are well aware there are numerous documents (e.g. granting of tenure, granting of promotion, and the granting of various professorships) that constitute a contract").  Further, the Court does not see how NMSU's actions violated Hyman's property rights to his position -- the record does not indicate that he no longer holds that position, nor does Hyman offer any other provision that NMSU purportedly violated.  Cf. Garcia v. Middle Rio Grande Conservancy Dist., 1996-NMSC-029, 918 P.2d 11 (holding that the personnel policy, which contained provisions relating to most aspects of the employment relationship amounted to an valid, implied-in-fact written contract under N.M. Stat. Ann. § 37-1-23(A)).  If the Court, therefore, construes Hyman's claim as a contract claim, the Court would conclude that immunity bars Hyman's claim, because Hyman does not provide a written employment contract as N.M. Stat. Ann. § 37-1-23(A) requires for New Mexico to waive immunity.

**IT IS ORDERED** that the Partial Motion to Dismiss Plaintiff's Complaint, filed March 11, 2019 (Doc. 10), is granted in part and denied in part.  The Court will dismiss (i) Counts I, III, and V without prejudice; (ii) Defendants Dan Howard, James Hoffman, and Nancy Oretskin without prejudice; and (iii) Count IV with prejudice.  The Court stays the case to give Hyman the opportunity to file an amended charge with the EEOC.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Grant C. Aguirre
Aguirre Morelli & Associates
Guthrie, Oklahoma

    *Attorney for the Plaintiff*

Cody R. Rogers
Mark D. Standridge
Jarmie & Rogers, P.C.
Las Cruces, New Mexico

    *Attorneys for the Defendants*